**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard Anthony MYERS,**
**Defendant–Appellant.**

**No. 92–50176.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1993.

Decided May 21, 1993.

Carolyn Chapman, San Diego, CA, for defendant-appellant.

Amalia Meza, Asst. U.S. Atty., argued; Bruce R. Castetter, Asst. U.S. Atty., on the brief, San Diego, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, SNEED and HALL, Circuit Judges.

SNEED, Circuit Judge:

Appellant Anthony Myers challenges both the district court's finding that he was competent to enter into a plea agreement, in which he pled guilty to conspiracy to manufacture methamphetamine with intent to distribute, and the district court's sentence for this crime. We affirm the district court in all respects.

## I.

### FACTS AND PRIOR PROCEEDINGS

In December of 1989, undercover government agents met with Anthony Myers and his companion, Mary Floyd, to conduct negotiations for the sale of ephedrine, a precursor ingredient for methamphetamine. Myers and Floyd were acting as brokers for a customer that manufactured methamphetamine and were interested in purchasing ephedrine over a one or two year period. At this meeting, Myers and Floyd provided the undercover agents with a twelve gram sample of methamphetamine produced by their customer. The agents reciprocally showed a barrel of the ephedrine, which Myers taste-tested. The meeting ended with Myers and Floyd agreeing to contact the agents with information about the quantity and price desired by the customer.

On December 19, 1989, the undercover officers and their informant met with Myers and Floyd, as well as the customer and his aide, to consummate the sale. After the customer displayed $270,000 in cash, Myers, the customer, and an agent proceeded to an area where 825 pounds of ephedrine was stored. The parties loaded the ephedrine onto a truck, and then government agents arrested all the defendants, including Floyd and the customer's aide, who had remained at the initial meeting place.

On January 3, 1990, an indictment was filed charging Myers and Floyd with violating 21 U.S.C. §§ 846 and 841(a)(1), conspiracy to manufacture methamphetamine with intent to distribute, and 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, possession with intent to distribute approximately twelve grams of methamphetamine and aiding and abetting.

In October of 1990, Myers and Floyd pled guilty, pursuant to a plea agreement, to the conspiracy to manufacture with intent to distribute count. They were released on bail. After many continuances of their sentencing hearing, Myers and Floyd signed an acknowledgment on April 15, 1991, stating they had not as yet provided any substantial assistance and they were to use their best efforts to do so. Myers' bail was revoked when his brother told the government that Myers was planning to leave the country. On January 29, 1992, due to his neurological impairment, Myers was sentenced to 166 months in prison, a term well below the 264 months recommended in the Pre-Sentencing Report.

## II.

### JURISDICTION AND STANDARDS OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction to review a final order under 28 U.S.C. § 1291. We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Johnson*, 760 F.2d 1025, 1026 (9th Cir.1985). We review a district court's determination of competency for clear error. *United States v. Lindley*, 774 F.2d 993 (9th Cir.1985) (per curiam). We review a district court's application of the Sentencing Guidelines de novo, but findings of fact under them for clear error. *United States v. Wilson*, 900 F.2d 1350, 1355 (9th Cir.1990).

## III.

### DISCUSSION

A. *Issues on Appeal.*

Two issues are raised in this appeal. First, did the district court abuse its discretion in denying the appellant's motion to withdraw his guilty plea? Second, was Myers properly sentenced?

B. *District Court's Denial of Motion to Withdraw Guilty Plea.*

▮▮▮▮ Appellant Myers claims he should have been allowed to withdraw his plea because he was incompetent when he entered it. "[T]he court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d). Withdrawal is freely given, but the burden is on the defendant to show a fair and just reason. *United States v. Read*, 778 F.2d 1437, 1440 (9th Cir.1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). The defendant has no right to withdraw a plea. *Id.* A defendant is competent to plead guilty only if he has the capacity for "reasoned choice" among the alternatives. *Moran v. Godinez,* 972 F.2d 263, 266 (9th Cir.),

cert. granted, —— U.S. ——, 113 S.Ct. 810, 121 L.Ed.2d 683 (1992).

■ Myers contends that a 1985 motorcycle accident, which resulted in neurological damage, rendered him incompetent to enter his guilty plea.

The district court was aware of the competency issue in this case. Various examinations and hearings took place on this issue. Two doctors, Laguna and Artiola, believed that Myers was unable, without assistance, to form complex plans and bring them to fruition. Another doctor, Kalish, specifically found that Myers was competent to enter into a plea agreement, but he did not review Myers' medical records as part of his analysis. Doctors Kucharski, Foster, and Westrick of the Federal Medical Center in Rochester, Minnesota, found that Myers was capable of rationally understanding and entering into a plea agreement when he did.

The district court held a hearing on January 29, 1991, to decide the motion to withdraw. The court found Myers competent to proceed at the time of the hearing and competent when he entered his plea. The court based this decision on several factors: Myers was represented by counsel who was aware of the competency issue from the beginning, Dr. Kalish's report finding Myers competent to enter into a plea bargain, the transcript of the change of plea hearing where the judge then presiding found him to be competent, an undercover agent's testimony that Myers was detailed and responsive in various meetings, videotape of Myers during the crime, audiotapes of Myers' phone calls that showed his dominance of conversations near the time of his plea, the report from the Federal Medical Center stating he was capable of making an informed decision regarding entering a plea, and finally, the judge's observations of Myers as he gave testimony before him.

Given the evidence of Myers' competence, the trial court's finding that Myers was competent to enter his plea was not clearly erroneous. The court did not abuse it discretion by denying Myers' motion to withdraw his plea.

## C. Did the District Court Properly Sentence Myers?

Myers makes several arguments to show that his sentence was improper.

### 1. Was Myers properly subjected to the 10 year minimum?

■ 21 U.S.C. § 841(b)(1)(A)(viii) mandates a 10 year minimum sentence for anyone who violates section 841(a) with 100 grams or more of methamphetamine. 21 U.S.C. § 846 provides that any person who conspires to commit an offense shall be subject to the same penalties prescribed for that offense. Myers argues that since only ephedrine, not methamphetamine, was seized, the minimum sentence should not apply. Application note 2 to Sentencing Guideline section 2D1.4, which concerns conspiracies, anticipates crimes in which ingredients rather then the end product are seized and instructs the judge to approximate the quantity of the controlled substance. The Pre-Sentencing Report used the guidelines to conclude that the 825 pounds of ephedrine would yield 250.73 kilograms of methamphetamine. The Pre-Sentencing Report gave a range of 235–293 months for the amount involved here, and recommended 264 months.

The 10 year minimum does not appear to have had any effect on Myers' 166 month sentence, which was set above ten years under the Guidelines. Even if the ten year minimum could affect the sentence, conspiracy does not require the completion of the crime, but simply the meeting of the minds and some overt act. *United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir.), *cert. denied*, 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). *See generally* Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law* § 6.4 (2d ed.1986). Myers and his co-conspirators clearly had a meeting of the minds concerning the deal and took overt steps to obtain a necessary ingredient for their scheme. Myers admitted this in his plea. The drugs did not need to be manufactured for the defendants to be convicted of conspiracy. The conspiracy was complete; Myers was guilty of the crime, and he was sentenced accordingly.

### 2. Did the Court Apply the Correct Sentencing Guideline?

Myers, in one of his stronger contentions, argues that the district court should have

applied Sentencing Guideline section 2D1.11, which covers possession of a listed chemical, rather than 2D1.1, which covers manufacturing a controlled substance, because 2D1.11 better covers his conduct. The district court directly addressed this issue and ruled that 2D1.1, not 2D1.11, was the proper guideline.

The Guidelines better support sentencing Myers pursuant to 2D1.1, rather than 2D1.11. Section 1B1.2 states that the offense of conviction is to be used to determine the guideline for sentencing. This is done so that defendants convicted under the same statute are sentenced in a consistent manner. Appendix A lists 2D1.1 as the guideline applicable to 21 U.S.C. § 841(a), the offense of conviction here. Section 2D1.11 even cross references 2D1.1 as the correct guideline when the offense involves the manufacturing of controlled substances. Myers pled guilty to conspiracy to manufacture methamphetamine with intent to distribute, and there is no reason the offense of his conviction should not determine the guideline used to calculate his sentence.

Myers may be arguing that *United States v. Perrone*, 936 F.2d 1403 (2d Cir.), *modified on reh'g*, 949 F.2d 36 (2d Cir.1991), helps his case on this point. In *Perrone*, the court found Guideline 2D1.10 was appropriate, not 2D1.1, when it was not possible to accurately estimate the drug quantity. Appellant argues that we should likewise use 2D1.11 as the more appropriate Guideline. Initially, it should be noted that *Perrone* concerned section 2D1.10 not section 2D1.11. Additionally, Myers has not challenged the validity of the conversion of the amount of ephedrine involved to methamphetamine, so there is no reason to depart from 2D1.1 in this case. 2D1.1 covers a conspiracy to manufacture methamphetamine with intent to distribute, and Myers was involved in such a conspiracy.

3. *Did the Court apply the Correct Statutory Section?*

Myers attempts to establish essentially the same point as made in the above Part III.C.2 by arguing that he should be sentenced under section 841(d), offenses involving listed chemicals, rather than section 841(a), manufacturing a controlled substance, because it

more closely fits his conduct. Myers argues that the Ninth Circuit should adopt this reasoning, as the Second Circuit did in *United States v. Perrone.*

In *Perrone* the defendant was convicted on both sections 841(a) and (d). The Second Circuit vacated the section 841(a) conviction because it was based solely on evidence of possession of a listed chemical, conduct covered in section 841(d). Myers argues his conviction is similarly based solely on possession of a listed chemical. That is not so, however. *Perrone* is distinguishable. The section 841(a) conviction in *Perrone* was vacated because "[t]here was no other evidence of a conspiracy to manufacture cocaine involving Perrone than his possession of the chemicals." 936 F.2d at 1415. In this case, the facts and the plea agreement make it clear that Myers was part of a conspiracy to manufacture methamphetamine.

Because Myers pled guilty to section 841(a) and admitted the conspiracy to manufacture methamphetamine, Myers was properly sentenced under 21 U.S.C. § 841(a) and U.S.S.G. § 2D1.1.

**AFFIRMED.**