UNITED STATES of America,
Plaintiff-Appellee,

v.

Candace Johnson O'LEARY,
Defendant–Appellant.

No. 94–40122
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 28, 1994.

S. Christopher Slatten, Davidson, Nix, Arceneaux, Jones & Askew, Shreveport, LA, for appellant.

Josette L. Cassiere, Asst. U.S. Atty., Michael D. Skinner, U.S. Atty., Shreveport, LA, for appellee.

Before JONES, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:

Candace Johnson O'Leary (O'Leary) was convicted of one count of conspiracy to manufacture methamphetamine and sentenced to imprisonment for 151 months. This Court affirmed her conviction on direct appeal, but vacated her sentence and remanded for resentencing because of the district court's misapplication of the sentencing guidelines. On remand, the district court revised its calculation of the amount of drugs and resentenced O'Leary to 151 months' imprisonment. Finding that the district court properly followed our mandate, we affirm.

### I. FACTS AND PROCEDURAL HISTORY

O'Leary was convicted of conspiracy to manufacture methamphetamine, a controlled substance. Authorities seized 51 pounds of phenylacetic acid (PA), which was used in calculating O'Leary's base offense level. In the first presentence report (PSR), the probation officer converted the 51 pounds of PA to 19.32 pounds of phenylacetone (P2P), then converted 19.32 pounds of P2P to 3,645 kilograms of marijuana, which resulted in a base offense level under the sentencing guidelines of 34.

In an unpublished opinion on direct appeal, this Court found that the probation officer had "apparently used the Drug Equivalency Table ("DET") to determine how much methamphetamine could be manufactured from 51 pounds of PA." We found that the use of the DET in calculating the base offense level was error and remanded for resentencing. We further stated that "[t]he sentence should be

determined according to the formula enumerated in [*United States v. Hoster,* 988 F.2d 1374, 1380–83 (5th Cir.1993) ]," and remanded for resentencing "consistent with" *Hoster.*

Upon resentencing, using a "standard" DEA formula for the conversion of PA to methamphetamine, the probation officer converted 51 pounds of PA to 20.043 pounds of P2P, which he then converted to 19.32 pounds, or 8.76 kilograms, of methamphetamine. 8.76 kilograms of methamphetamine resulted in the same base offense level of 34. The probation officer stated that he took this Court's ruling and "the limited impact of *U.S. v. Hoster*" into consideration in his recalculation. The court overruled O'Leary's objections and adopted the revised calculations.

## II. CALCULATION OF BASE OFFENSE LEVEL ON REMAND

O'Leary argues that the district court failed to recalculate her base offense level in accordance with *Hoster,* 988 F.2d at 1381–82, as mandated by this Court. In our opinion remanding for resentencing, we found that the district court erred by using the DET to determine how much methamphetamine could be manufactured from 51 pounds of PA. We stated that this calculation was an impermissible use of the DET and remanded for resentencing "according to the formula enumerated in *Hoster.*"

In *Hoster,* this Court held that the district court plainly erred by failing to consider the effect of U.S.S.G. § 2D1.11 on the sentence of a defendant who had been convicted of possessing amphetamine with the intent to distribute it. 988 F.2d at 1381–83. Section 2D1.11(a) provides that the base offense level for unlawfully possessing a listed chemical is set forth in the Chemical Quantity Table. Hoster had agreed to purchase one pound of amphetamine and 110 pounds of PA from an undercover agent. *Id.* at 1376. PA is a "listed chemical." To calculate his sentence, the district court considered the attempted possession of the PA as relevant conduct. *Id.* at 1380. The PSR converted the PA to phenylacetone, converted the amphetamine and phenylacetone to marijuana using the § 2D1.1 DET, and then added the two amounts to come up with a base offense level of 34. *Id.*

This Court determined that, pursuant to § 2D1.11, comment. (n. 3), when a defendant is convicted of an offense involving a listed chemical and a related offense involving a controlled substance, the appropriate method for calculating the defendant's sentence is to follow the grouping rules set out in § 3D1.2(d) on the basis of the aggregate quantity of the substances involved. *Id.* at 1382. Applying this method resulted in a six-level reduction for the defendant. *Id.* at 1382–83. We then concluded that the district court plainly erred by not taking § 2D1.11 into account. *Id.* at 1383.

In the case at bar, on remand for resentencing, the district court did not expressly mention § 2D1.11. Section 2D1.11(c)(1), however, cross references § 2D1.1 as the correct guideline when the offense involves the *manufacturing* of controlled substances. That section provides that if "the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 ... if the resulting offense level is greater than that determined above." Commentary note 2 explains this subsection to mean, with respect to "attempt," that the defendant "completed the actions sufficient to constitute the offense of ... attempting to manufacture a controlled substance unlawfully."

O'Leary's offense of conviction was conspiracy to manufacture methamphetamine, rather than manufacturing or attempting to manufacture methamphetamine. In *United States v. Bellazerius,* however, this Court recently stated that conspiracy to manufacture methamphetamine is an offense encompassed by § 2D1.11(c)(1). 24 F.3d 698, 703–04 (5th Cir.1994). Rejecting an argument similar to O'Leary's, we concluded that the district court did not err by using the Drug Quantity Table found in § 2D1.1 rather than the Chemical Quantity Table for precursor chemicals found in § 2D1.11 to sentence two defendants convicted of conspiracy to manufacture methamphetamine. *Id.*

Additionally, we cited *United States v. Myers,* 993 F.2d 713 (9th Cir.1993), in support of the conclusion reached in *Bellazerius.* 24 F.3d at 704 n. 18. In *Myers,* the Ninth Circuit noted that Appendix A listed § 2D1.1 as the guideline applicable to 21 U.S.C. § 841(a), and that § 2D1.11 cross-referenced § 2D1.1 as the correct guideline when the offense involves the manufacturing of controlled substances. *Myers,* 993 F.2d at 716. The Ninth Circuit concluded that because the defendant pleaded guilty to conspiracy to manufacture methamphetamine with intent to distribute, there was "no reason the offense of his conviction should not determine the guideline used to calculate his sentence." *Id.*

O'Leary argues that *"Bellazerius* is inapplicable because Ms. O'Leary has never asked, as did those defendants, that her [base offense level] be based solely on § 2D1.11. Rather, she asks only that that provision's effect on § 2D1.1 be taken into account as is specifically required by this Court's mandate to follow *Hoster."* O'Leary further argues that if *Bellazerius* is read to conflict with this Court's mandate, the law of the case doctrine controls.

However, regardless of our decision in *Bellazerius,* O'Leary "completed the actions sufficient to constitute ... attempting to manufacture a controlled substance unlawfully." *See* § 2D1.11, comment. (n. 2). O'Leary attempted a "cook," an attempt to produce methamphetamine from PA, in March 1989, supplied materials necessary for a cook, and acted as a go-fer, user, transporter, and helper with cooks. A hand-written formula was also discovered in O'Leary's handwriting. *See United States v. Acuna,* 9 F.3d 1442, 1447–48 (9th Cir.1993) (evidence showed defendant "intended to manufacture methamphetamine and ... took a substantial step towards the completion of that objective").

O'Leary's offense of conviction was conspiracy to manufacture methamphetamine, an offense encompassed by the cross-referencing provision in § 2D1.11(c)(1), and her base offense level of 34 under § 2D1.1 was greater than that under § 2D1.11 (possession of 20 kilograms or more of PA yields a base offense level of 28). Thus, § 2D1.1 was the applicable provision. Further, as instructed, the district court considered *Hoster* and did not use the DET to determine how much methamphetamine could be manufactured from 51 pounds of PA. Although the district court did not specifically state that it used the cross-referencing provision in § 2D1.11(c)(1) to arrive at its application of § 2D1.1, the court reached the correct result by applying § 2D1.1. As the court recognized, *Hoster*'s effect on O'Leary's sentencing was limited by the fact that, unlike Hoster, O'Leary was convicted of conspiracy to *manufacture* a controlled substance. Thus, the district court's resentencing of O'Leary was not inconsistent with *Hoster* or our instructions on remand.

### III. CONCLUSION

For the foregoing reasons, the sentence imposed is AFFIRMED.