42 F.3d 1402
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Wesley ARLT, Anita Gage, James Wren, & James Rocky
Hill, Defendants-Appellants
 Nos. 92-50467, 92-50471, 92-50473, 92-50515, 92-50516,
92-50517 and 92-50611.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1994.
Decided Dec. 1, 1994.
 
 1
 Before: POOLE and REINHARDT, Circuit Judges, TANNER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 BACKGROUND
 
 3
 Charles Wesley Arlt, Anita Gage, James Wren, and James Rocky Hill were convicted and sentenced for conspiracy to manufacture methamphetamine and to aid and abet the manufacture of methamphetamine. Arlt, Wren, and Hill were also convicted and sentenced for money laundering. The appellants purchased large amounts of chemicals used in the manufacture of methamphetamine and distributed them to methamphetamine manufacturers at a substantial profit. They attempted to explain their activities by claiming they were gold miners who used the chemicals in a mining process.
 
 
 4
 This is a consolidated appeal; appellants have expressly joined in each other's arguments to the extent they are applicable. We deal with all of the claims of the appellants in this disposition except Arlt's self-representation claim, which we decide in a separate opinion, filed concurrently herewith.
 
 ISSUES AND ANALYSIS
 I. Sufficiency of the Evidence
 
 5
 Gage, Wren, and Hill argue that their convictions were based on insufficient evidence, with regard to both the nature of the conspiracy and their involvement in it. They contend that there was only evidence to prove the existence of a conspiracy to distribute precursor chemicals. In analyzing their claim, we must review the record as a whole in the light most favorable to the prosecution to determine whether any rational juror could have found them guilty beyond a reasonable doubt. United States v. Adler, 879 F.2d 491, 495 (9th Cir.1988), cert. denied, 113 S.Ct. 2348 (1993).
 
 
 6
 A rational juror could conclude beyond a reasonable doubt that the purpose of the conspiracy was to manufacture methamphetamine. Evidence was presented that the appellants purchased extremely large quantities of the chemicals used in the manufacturing process and delivered them to methamphetamine manufacturers. One of the participants maintained a drug ledger and close contact with manufacturers of methamphetamine. Another participant in the conspiracy, Russell Higgins, testified that Arlt hired him to transport methamphetamine and that Arlt himself had manufactured methamphetamine. Higgins also testified that Arlt and Gage had discussed a recipe for the manufacture of methamphetamine, strategies to obtain the chemicals necessary to manufacture it, and methods to conceal the purpose of the conspiracy.
 
 
 7
 The appellants next contend that there was inadequate evidence for a juror to conclude beyond a reasonable doubt that the appellants were aware of the purpose of the conspiracy. We have held that "a defendant cannot be legally bound to a conspiracy unless his understanding with co-conspirators 'was of sufficient scope to warrant the conclusion that he embraced the common purpose of the conspiracy.' " United States v. Umagat, 998 F.2d 770, 772-73 (9th Cir.1993) (citing United States v. Bibbero, 749 F.2d 581, 588 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985)).
 
 
 8
 A review of the record in the light most favorable to the prosecution, however, reveals that the jury could find beyond a reasonable doubt that each of the appellants was aware of the scope of the conspiracy. There was extensive evidence that Gage served as an intermediary between Arlt and the Mexican nationals manufacturing methamphetamine, that she had purchased precursor chemicals, and that she had sold methamphetamine. The record also provides strong evidence concerning the involvement of Wren and Hill, including evidence that Wren had ordered and transported large quantities of precursor chemicals and that he and Hill had transported hundreds of thousands of dollars in cash to pay for these chemicals. In addition, Wren, Arlt, and Hill were aware that large amounts of money and methamphetamine had been seized during the arrest of one of their buyers. Thus, extensive evidence supports the appellants' convictions.
 
 II. Denial of Investigative Funds
 
 9
 Arlt maintains that the district court abused its discretion in denying him funds for an investigator under 18 U.S.C. Sec. 3006A(e)(1). Arlt maintains that he required the funds to locate two men whom he claims to have hired to investigate the activities of one of his associates in order to verify that she was not using the acid to manufacture methamphetamine, thus buttressing his claim that he was unaware that the hydriodic acid he supplied was used for illicit purpose. In addition, he claims that he required a mining expert to assist him in his testimony concerning his mining activities.
 
 
 10
 In order to succeed on his claim, Arlt must show that a reasonable counsel would have "required" the investigative services and that the denial of the request prevented him from receiving effective assistance of counsel under the Sixth Amendment. United States v. Smith, 893 F.2d 1573 (9th Cir.1990). We cannot reverse the district court's decision unless the defendant provides clear and convincing evidence of prejudice. Mason v. Arizona, 504 F.2d 1345, 1352 (9th Cir.1974), cert. denied, 429 U.S. 936 (1975).
 
 
 11
 Even if the district court abused its discretion in denying Arlt's request, Arlt has not demonstrated that its failure to authorize funds prevented him from receiving effective assistance of counsel under the Sixth Amendment. See Strickland v. Washington, 466 U.S. 668 (1984). Arlt has not offered any substantial evidence that two corroborating witnesses for part of his testimony or the assistance of a mining expert would have changed the outcome of the trial, especially in light of the overwhelming evidence that Arlt was using gold mining as a front for his illicit activities. See Strickland, 466 U.S. at 694 (noting that a verdict with overwhelming record support is unlikely to be affected by errors).
 
 III. Admission of Higgins' Testimony
 
 12
 Gage contests the district court's admission of Russell Higgins' testimony on two grounds. First, she contends that his testimony constituted inadmissible hearsay. Second, she contends his statements were too incredible to be believed and accordingly should have been excluded. We reject both claims.
 
 
 13
 The district court did not err in admitting Russell Higgins' testimony. Most of the testimony that Higgins provided concerned Gage's own statements and are therefore admissible under Fed.R.Evid. 801(d)(2)(A), which provides that a "statement is not hearsay if ... [t]he statement is offered against a party and is ... the party's own statement." The parts of Higgins' testimony that involved Arlt's descriptions of Gage's participation in the conspiracy are admissible under Fed.R.Evid. 801(d)(2)(E) because they meet the requirements of Bourjaily v. United States, 483 U.S. 171, 175-181 (1987) (outlining the four-part test), and United States v. Silverman, 861 F.2d 571, 577 (9th Cir.1988). There was sufficient independent evidence on the record for the district court to conclude that Gage was aware of and involved in the conspiracy. In making its determination, the district court could consider Higgins' extensive testimony concerning Gage's involvement as long as its decision did not rest solely upon this evidence. United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir.1988). Moreover, Higgins' testimony concerned statements by Arlt that were clearly made in the course and in furtherance of the conspiracy. Thus, the district court did not err in admitting Higgins' testimony under Fed.R.Evid. 801(d)(2)(E).
 
 
 14
 We also reject Gage's claim that her conviction should be reversed because it was entirely based on Higgins' testimony, which she argues is inherently unbelievable. First, Gage's conviction rested on other evidence. Second, even without this evidence, the "uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face." United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir.1993), amended, 1993 U.S.App. LEXIS 7785 (1992). Because evidence on the record corroborated significant portions of Higgins' testimony, the district court did not err in admitting it.
 
 
 15
 IV. Admission of Evidence Concerning Prior Bad Acts
 
 
 16
 Arlt claims that the district court erred in allowing an undercover law enforcement agent to testify about his conversation with Arlt that took place three years before Russell Higgins was hired by Arlt to participate in the conspiracy. Rule 404(b) forbids the admission of evidence of prior crimes, acts, or wrongs in order to show action in conformity with that character. Rule 404(b) does, however, allow the admission of prior conduct to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 17
 In order to prove that the district court erred under Rule 404(b), Arlt must demonstrate that the evidence did not satisfy the four-part test outlined in United States v. Arambula-Ruiz, 987 F.2d 599 (9th Cir.1993). The evidence must also have more probative value than prejudicial effect. Arambula-Ruiz, 987 F.2d at 602.
 
 
 18
 The testimony in question clearly satisfies all four prongs of the Arambula-Ruiz test. The prior conduct is similar to the charged conduct, it is based on sufficient evidence (the testimony of an undercover law enforcement officer), and it is not too remote in time. See Arambula-Ruiz, 987 F.2d at 604 (finding that five years is not too remote in time). Moreover, the evidence helped disprove Arlt's claim that he had no knowledge of the existence of a conspiracy to manufacture methamphetamine, a material element of the conspiracy charge. Arambula-Ruiz, 987 F.2d at 603. We hold that the evidence was therefore admissible under Rule 404(b).
 
 V. Admission of Guns into Evidence
 
 19
 Arlt also asserts that the district court erred in admitting into evidence 40 handguns, semiautomatic weapons, and rifles seized from Arlt's property in Nevada, where he was arrested after fleeing California shortly after learning of the government's investigation. Arlt argues that there was no evidence linking the guns to the crimes in question and that the evidence was more prejudicial than probative under Fed.R.Evid. 403. We reject this claim.
 
 
 20
 The district court did not abuse its discretion in admitting the weapons as evidence in this case. We have repeatedly found that a connection exists between narcotics offenses and firearms on the ground that, "[b]ecause guns are used in many drug transactions, '[i]t may reasonably be inferred that an armed possessor of drugs has something more in mind than personal use.' " United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.1988) (citation omitted), cert. denied, 488 U.S. 943 (1988). In this case, there is significant evidence on the record that demonstrates that the district court did not err in admitting these weapons into evidence.
 
 VI. Motions to Suppress Evidence
 
 21
 Hill contends that the district court erred in denying his motion to quash the search warrant and suppress the evidence seized because the affidavit supporting the search failed to establish a nexus between the residence searched and the criminal activity under suspicion. After executing a search warrant at 8293 Saddle Creek Drive, where officers believed Hill resided, officers discovered that the residence had been purchased by persons unrelated to Hill. At a warrant search of another location, Hill's wife told an officer that they had moved to 3455 Audobon.
 
 
 22
 We hold that the district court properly denied Hill's motion to suppress evidence seized under the warrant search. We have held that "a magistrate may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." United States v. Ayers, 924 F.2d 1468, 1479 (9th Cir.1991). In particular, we have noted that "in the case of drug dealers, evidence is likely to be found where the dealers live." United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986).
 
 
 23
 The Audobon affidavit noted Officer Ringnes' experience with narcotics investigations and the admission of Hill's address by his wife. In addition, the Saddle Creek affidavit, which had already been found sufficient for a warrant, was attached; it included descriptions of activities linking Hill to a narcotics conspiracy. Under these circumstances, the magistrate did not clearly err in finding probable cause to issue the warrant for Hill's Audobon residence.
 
 
 24
 In addition, Gage alleges that the district court should have granted her motion to suppress the evidence seized in a search of her residence because the officer preparing the search warrant knowingly and intentionally omitted information concerning the informant's criminal history.
 
 
 25
 The magistrate did not clearly err in finding probable cause for issuing the warrant for Gage's residence. The affidavit submitted to the magistrate noted the informant's assertions that Gage was involved in a narcotic conspiracy, the officer's experience with narcotics investigations, and the officer's statement that he had corroborated statements given by the informant. Corroboration of the details of an informant's tip by independent police work may indicate its reliability. Ayers, 924 F.2d at 1478. There was therefore adequate evidence to justify issuing a warrant.
 
 
 26
 Moreover, the district court did not err in subsequently finding that the officer's omissions were not knowing, intentional, or in reckless disregard of the truth. The district court's factual findings are reviewed for clear error. United States v. Bertrand, 926 F.2d 838, 842 (9th Cir.1991). In this case, there was adequate evidence on the record to support the court's determination and we find no reason to disturb its factual finding.
 
 VII. Severance
 
 27
 Gage asserts that the district court erred in refusing to sever her trial. Because Gage failed to renew her motion at the close of evidence, she has waived her right to appeal. United States v. Davis, 932 F.2d 752, 762 (9th Cir.), amended, 91 Daily Journal D.A.R. 7455 (9th Cir.1991). Even if Gage had not waived her claim, she has not proved " 'clear,' 'manifest,' or 'undue' prejudice from the joint trial that violates one of [her] substantive rights so that the prejudice is of 'such magnitude that the defendant was denied a fair trial.' " United States v. Felix-Gutierrez, 940 F.2d 1200, 1209 (9th Cir.1991) (citations omitted), cert. denied, 113 S.Ct. 504 (1992). Indeed, since one of Gage's codefendants was not found guilty by the jury, it is clear that the jury could "compartmentalize the evidence as it relates to separate defendants." United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.), cert. denied, 449 U.S. 856 (1980).
 
 VII. Prosecutorial Misconduct
 
 28
 Wren claims that he is entitled to a new trial due to prosecutorial misconduct. We find that Wren has not established a claim of prosecutorial misconduct under the three-part test outlined in United States v. Sanchez-Robles, 927 F.2d 1070, 1076 (9th Cir.1991). The prosecutor's single statement comparing Wren's lack of knowledge defense to the "Nuremberg defense," while historically inaccurate, simply was not sufficiently egregious to constitute prejudicial misconduct. Attorneys are accorded significant discretion in making their closing arguments. United States v. Birges, 723 F.2d 666, 671-72 (9th Cir.1984), cert. denied, 466 U.S. 943 (1984), cert. denied, 469 U.S. 131 (1989). Indeed, we have found that "[c]ounsel may be allowed some latitude in illustrating their arguments by reference to notorious or historical events without being automatically found to have committed irreparable prejudice." United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986). Moreover, even if the isolated reference to the Nuremberg trials might have prejudiced the defendant, the trial judge neutralized the effect of the comment by requiring the prosecutor to apologize as soon as Wren's counsel raised an objection. See Endicott, 803 F.2d at 513. Accordingly, we reject Wren's claim.
 
 IX. Juror Instruction
 
 29
 The district court instructed the jury concerning conspiracy to manufacture methamphetamine under 21 U.S.C. Sec. 841(a). Appellants claim that the district court should have instructed the jury on what they claim is a lesser-included offense, distribution of a listed chemical under 21 U.S.C. Sec. 841(d). Even if we were to adopt the appellants' novel, and highly suspect legal argument, the district court did not abuse its discretion in finding that no rational juror could conclude that the defendants were guilty of the lesser offense but not the greater--that is, that appellants had reasonable cause to believe that the acid would be used to manufacture methamphetamine but did not intend its manufacture. See United States v. Roston, 986 F.2d 1287, 1291 (9th Cir.), cert. denied 114 S.Ct. 206 (1993); United States v. Gutierrez, 990 F.2d 472, 477 (9th Cir.1990).
 
 
 30
 Similarly, we find that the appellant's alternative argument--that commission of the offense must be completed under 21 U.S.C. Sec. 841(a) but not completed under 21 U.S.C. Sec. 841(d)--to be incorrect as a matter of law. See, e.g., United States v. Myers, 993 F.2d 713, 715 (9th Cir.1993). Accordingly, we hold that the district court did not err in instructing the jury.
 
 X. Sentencing Errors
 A. Misapplication of the Guidelines
 
 31
 The defendants rely heavily upon United States v. Perrone, 935 F.2d 1403 (2d Cir.1991), clarified on reh'g, 949 F.2d 36 (2d Cir.1993), for their contention that they should have been sentenced under U.S.S.G. Sec. 2D1.11, which covers possession of a listed chemical under 21 U.S.C. Sec. 841(d), rather than under U.S.S.G. Sec. 2D1.1, which covers manufacture of a controlled substance under 21 U.S.C. Sec. 841(a). According to the appellants, they were convicted merely for possession of a listed chemical and therefore should have been sentenced under the more lenient provision of the Sentencing Guidelines.
 
 
 32
 The appellants' contention is without merit. We have explicitly rejected this argument in Myers, 993 F.2d at 716. In Myers, the defendant claimed, on precisely the same ground, that section 2D1.11 "better covers his conduct." Id. at 716. We rejected his claim that he should have been sentenced under section 841(d) and that U.S.S.G. Sec. 2D1.11 should have guided the district court. Id. Accordingly, we reject the appellants' claim here.
 
 B. Calculation of the Projected Yield
 
 33
 Appellants also challenge the district court's sentence on the ground that the district court miscalculated the amount of methamphetamine for which they were responsible.
 
 
 34
 We hold that the district court did not err in interpreting the Sentencing Guidelines. In cases in which the amount of drugs seized does not reflect the scale of the offense, the Sentencing Guidelines invite a court to estimate the quantity that could be produced from the precursor chemical. See U.S.S.G. Sec. 2D1.4(a), Application Note 2. In addition, we have upheld approximations by district courts concerning the amount of methamphetamine a particular precursor chemical is capable of producing. See, e.g., United States v. Aichele, 941 F.2d 761, 767 (9th Cir.1991).
 
 
 35
 Appellants next assert that the factual basis for the court's determination was "junk science" and that the court's use of a three-to-one ratio between the precursor chemical and the methamphetamine yield was erroneous. The district court did not clearly err in determining the yield, however. The court relied upon the most conservative estimate of an expert witness, who had direct experience in the area and a degree in chemistry, and the appellants did not provide a witness to counter this testimony. See United States v. Roberts, 5 F.3d 365, 372 (9th Cir.1993) (upholding a district court's use of a four-to-one ratio of precursor chemical to methamphetamine); United States v. Williams, 989 F.2d 1061, 1073 (9th Cir.1993) (upholding the district court's reliance upon expert testimony).
 
 C. Foreseeability
 
 36
 Appellants also argue that the district court erred in holding them responsible for a yield of methamphetamine that they could not reasonably have foreseen would be produced from their involvement in the conspiracy. The appellants' legal claim is without merit. In Williams, we refused to reverse a district court's sentencing determination on the ground that the defendants could only "have reasonably foreseen" that a smaller amount would have been produced from the precursor chemicals with which he dealt. Williams, 989 F.2d at 1072-74. In addition, we have repeatedly confirmed decisions of district courts that have calculated the practical yield of a precursor chemical without inquiring into the defendant's scientific knowledge of the conversion ratio. See, e.g., Roberts, 5 F.3d at 372; United States v. Aichele, 941 F.2d 761, 766 (9th Cir.1991).
 
 
 37
 The appellants correctly assert that the district court may only hold them responsible for the activities of their coconspirators to the extent that they were involved in the conspiracy. See, e.g., U.S.C.G. Sec. 1G1.3, comment n. 1.
 
 
 38
 In this case, however, the district court specifically based each sentence upon the amount of methamphetamine that could have been produced from the precursor chemicals with which the conspiracy dealt after each defendant joined the conspiracy. There was adequate support on the record for the district court's factual finding. See, e.g., United States v. Chavez-Gutierrez, 961 F.2d 1476, 1479-81 (9th Cir.1992). Accordingly, we hold that the district judge did not err.
 
 XII. Possession of a Firearm
 
 39
 Wren and Hill appeal the district court's decision to increase their base sentencing level by two points for possession of a firearm during the commission of the conspiracy under U.S.S.G. Sec. 2D1.1(b). Appellants assert that the prosecution never established the existence of a connection between the possession of the guns and the commission of the conspiracy.
 
 
 40
 The record provides extensive support for the district court's decision to augment both sentences. This evidence includes testimony that Wren explicitly informed a bank manager that Hill always carried a firearm when he made money deliveries, thus demonstrating that a firearm was used during the commission of the conspiracy and that Wren was aware of this fact. Thus, we hold that the district court did not err in augmenting the sentence of either defendant.
 
 XIII. Minimal Participant Reduction
 
 41
 Gage argues that the district judge erred in failing to find that she was a minimal participant in the conspiracy. The district court's determination is reviewed for clear error. United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir.1989).
 
 
 42
 The district court's finding was supported by evidence that Gage served as an intermediary between the suppliers of hydriodic acid and the manufacturers of methamphetamine and that she was involved in mapping out the conspiracy's strategies during its early stages. Because there was adequate factual support for the district court's conclusion, we hold that the district court did not clearly err.
 
 
 43
 XIV. Justification for Imposing a Life Sentence
 
 
 44
 Gage argues that the district judge did not adequately state his reasons for sentencing her to life imprisonment. Under 18 U.S.C. Sec. 3553(c), a judge must state his reasons for imposing a sentence that exceeds 24 months. The district court's statement is reviewed de novo. United States v. Johnson, 953 F.2d 1167, 1173 (9th Cir.), cert. denied 113 S.Ct. 226 (1992).
 
 
 45
 In sentencing Gage, the district judge met the requirements of United States v. Upshaw, 918 F.2d 789, 792 (9th Cir.1990), cert. denied, 499 U.S. 930 (1991), and provided a statement justifying Gage's conviction that closely resembled the statement that we upheld in Johnson, 953 F.2d at 1173. Accordingly, the district court did not err in sentencing Gage.
 
 XV. Outrageous Government Conduct
 
 46
 Butterfield, a member of the California National Guard assigned to investigate the activities of the appellants, attempted to extort money from them in return for information regarding government surveillance of their operations. He made contact with the appellants through Wren's wife, Regina. At a meeting arranged by Regina Wren, Butterfield was surprised by six men, including Wren and Hill, who took Butterfield's copy of the operations plan and interrogated him about his identity and knowledge of the surveillance sites.
 
 
 47
 A search warrant was subsequently executed at the Wren residence. According to the government, when officers confronted Regina Wren, she was carrying a loaded .357 magnum revolver and, after being ordered to drop it, moved to point it at the officers. She was shot once and killed. Wren contends that his wife was brutally murdered and that the government's statement that she was reaching for a weapon was false. Wren asserts that the government set up Butterfield's extortion attempt to obtain evidence and, after the attempt failed, murdered Regina Wren to prevent her from testifying about it.
 
 
 48
 We find it unnecessary to address whether the conduct in question constituted outrageous government conduct because Wren has not provided any concrete evidence supporting his theories, which are directly undercut by his own statement following his wife's death. Accordingly, we have no basis for concluding that the district court's factual conclusions were clearly erroneous. United States v. Restrepo, 930 F.2d 705, 712 (9th Cir.1991).
 
 XVI. Money Laundering Sentences
 
 49
 The government cross-appeals on the ground that the district court erred in sentencing Arlt, Wren, and Hill to a five-year concurrent term for money laundering. We must review the district court's interpretation of the guidelines de novo. United States v. Conkins, 9 F.3d 1377, 1384 (9th Cir.1993).
 
 
 50
 The government correctly notes that Sentencing Guidelines Section 3.D require the district court to determine a single offense level that encompasses all counts of conviction. This single combined offense level should determine the sentence for all counts. Introductory Commentary. Arlt, Wren, and Hill received adjusted offense levels of 48, 44, and 40, respectively. Accordingly, Arlt and Wren received life sentences, and Hill received a minimum sentence of 292 months.
 
 
 51
 The defendants were also convicted of money laundering under 18 U.S.C. Sec. 1956(a)(1). The base offense level attributed to each defendant requires that the maximum sentence for this crime be imposed. Accordingly, the district court should have imposed 20-year concurrent sentences upon the defendants. We therefore remand to the district court to adjust its sentence accordingly.
 
 CONCLUSION
 
 52
 We reject the appellants' claims concerning sufficiency of the evidence, the denial of investigative funds, the admission of a coconspirator's testimony, the admission of testimony concerning prior bad acts, the admission of guns into evidence, the denial of motions to suppress evidence seized through a search warrant, severance, prosecutorial misconduct, jury instruction, sentencing errors, possession of a firearm, minimal participant reduction, justification for imposing a life sentence, and outrageous government conduct. We remand this case to the district court for recalculation of the sentence on the money laundering charges for Wren and Hill.
 
 
 
 *
 The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3