_____

No. 94-3493
_____

United States of America,                *
                                          *
          Plaintiff - Appellee,           *
                                          *  Appeal from the United States
     v.                                   *  District Court for the
                                          *  Eastern District of Missouri.
Steven Griggs,                            *
                                          *
          Defendant - Appellant.          *


_____

              Submitted:  June 13, 1995

                 Filed:  November 30, 1995
_____

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON and JOHN R. GIBSON,
     Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Steven Griggs appeals the sentence imposed upon him following a
guilty plea to charges of conspiracy to manufacture and distribute 100
grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1)
(1988).  He argues that the district court[1] erred in determining his base
offense level by using the wrong table in the Sentencing Guidelines, by
reducing the precursor chemicals to an equivalent amount of methamphetamine
and by holding him responsible for dextro-methamphetamine, in not finding
the government violated its plea bargain agreement by providing information
outside of the stipulated facts, and in failing to comply with Federal Rule
of Criminal Procedure 32 in conducting the

_____

     [1]The Honorable Donald J. Stohr, United States District Judge
for the Eastern District of Missouri.

sentencing hearing.  We affirm the sentence imposed.

On October 8, 1992, Griggs pleaded guilty to the first count of a three-count indictment against him.  In doing so, he specifically pleaded guilty to conspiracy to: (1) possess phenylacetic acid with intent to manufacture methamphetamine; (2) manufacture 100 grams or more of methamphetamine; (3) possess with intent to distribute 100 grams or more of methamphetamine; and (4) distribute 100 grams or more of methamphetamine.  In conjunction with his guilty plea, Griggs signed a written stipulation to facts relevant for sentencing, including that he had manufactured methamphetamine on six different occasions and that on each occasion he used approximately five pounds of phenylacetic acid to produce twenty-two ounces of methamphetamine.  Griggs also admitted that he instructed a coconspirator, Bruce Harrington, to acquire twenty-five pounds of phenylacetic acid for the purpose of manufacturing methamphetamine.  Finally, Griggs and the government agreed that Griggs was entitled to a two-point reduction in his offense level for acceptance of responsibility, a two-point addition for possession of a weapon, and a two-point addition for supervising a coconspirator.

In consideration for Griggs' guilty plea and stipulation to the above facts, the government agreed to dismiss Counts Two and Three against Griggs.  It also agreed to make a nonbinding recommendation to the district court that Griggs' sentence be 188 months.  Finally, the government agreed to bring no additional charges against Griggs arising out of the investigation in his case.

Griggs failed to appear at his January 8, 1993 sentencing hearing.  Law enforcement officials apprehended Griggs on January 2, 1994.  They found a total of 5.6 kilograms of methamphetamine in Griggs' possession and on his property at the time of his arrest.

The United States Probation Office prepared a presentence report for Griggs' sentencing. Using the facts to which Griggs stipulated, the presentence report stated that Griggs made 20 to 22 ounces, or 567 to 623 grams, of methamphetamine on 6 different occasions, using 5 pounds of phenylacetic acid each time. Thus, over these 6 occasions, Griggs had produced a total of 3.4 to 3.7 kilograms of methamphetamine. In addition to this methamphetamine, the presentence report held Griggs responsible for the 25 pounds of phenylacetic acid which Griggs instructed Harrington to obtain. Based on Griggs' stipulation that he used 5 pounds of phenylacetic acid to produce 567 to 623 grams of methamphetamine, the presentence report converted the 25 pounds of phenylacetic acid to 2.8 to 3.1 kilograms of methamphetamine. The presentence report also held Griggs responsible for the 5.6 kilograms of methamphetamine found during his arrest on January 2, 1994. After adding all of the above amounts together, the presentence report held Griggs responsible for a total of 11.8 to 12.4 kilograms of methamphetamine.

The presentence report fixed Griggs' base offense level at thirty-six using the amount of methamphetamine for which Griggs was responsible and the Drug Quantity Table in subsection 2D1.1(c) of the Sentencing Guidelines. Relying in part on Griggs' stipulation, the presentence report added two points to Griggs' base offense level for Griggs' possession of a firearm during the offense, and two points for Griggs' being a supervisor during the offense. The presentence report also added two points because Griggs obstructed justice by failing to appear at his January 8, 1993 sentencing hearing. With these additions, the presentence report found Griggs' total offense level to be forty-two.

The district court sentenced Griggs on September 23, 1994. At the sentencing hearing, Griggs made only one objection to the presentence report. Griggs asked the district court for a two-point reduction in his offense level for his acceptance of

responsibility even though the presentence report did not give him such a reduction. The court, after determining that this case was an exceptional one, granted Griggs' request for a two-point reduction for acceptance of responsibility. After this request, Griggs made no more objections.

The district court sentenced Griggs in accordance with the presentence report as modified by Griggs' request. Griggs' offense level was forty and his criminal history category was I. Accordingly, the Sentencing Guidelines gave the district court a sentencing range of 292 to 365 months. The district court sentenced Griggs to 292 months. Griggs now appeals his sentence.

**I.**

Griggs argues that the district court incorrectly calculated his sentence under the Sentencing Guidelines by using the Drug Quantity Table, rather than the Chemical Quantity Table, to calculate his base offense level and by converting the phenylacetic acid he conspired to possess into methamphetamine.

Griggs failed to object to the district court's use of the Drug Quantity Table or its conversion of the phenylacetic acid. Thus, we cannot reverse the district court unless its actions are plain error. Fed. R. Crim. P. 52(b); United States v. Olano, 113 S. Ct. 1770, 1776-79 (1993). Plain error is an obvious error which harms substantial rights of the defendant. Olano, 113 S. Ct. at 1776-78. If the error is plain, we may correct it at our discretion. Id. at 1778-79. We should, however, correct a plain error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. at 1779.

In this case, we apply the United States Sentencing Commission, Guidelines Manual of November 1993 because it was in effect at the time of Griggs' sentencing hearing and there are no

Ex Post Facto Clause concerns.  <u>United States v. Gullickson</u>, 981 F.2d 344, 346 (8th Cir. 1992).  Section 2D1.11 of the Sentencing Guidelines governs the use of the Chemical Quantity Table in sentencing.  Subsection 2D1.11(c)(1) states that "[i]f the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully, apply § 2D1.1 . . . if the resulting offense level is greater than that determined" under subsections 2D1.11(a) and 2D1.11(b).  Section 2D1.11 further explains that subsection 2D1.11(c)(1) applies when the defendant has "completed the actions sufficient to constitute the offense of unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully."  USSG § 2D1.11, comment. (n.2).

To calculate a defendant's base offense level using the Drug Quantity Table in section 2D1.1, a court must first determine the amount of methamphetamine for which the defendant should be held responsible.  USSG § 2D1.1(c).  In determining this amount, the court may approximate the quantity of methamphetamine by looking at the circumstances of the defendant's drug conspiracy.  USSG § 2D1.1, comment. (n.12).  Once the court has determined the amount of methamphetamine for which the defendant is responsible, the court finds that amount on the Drug Quantity Table to determine the defendant's base offense level.  USSG § 2D1.1(c).

Griggs argues that the district court should have used the Chemical Quantity Table in section 2D1.11 of the Sentencing Guidelines to sentence him, rather than the Drug Quantity Table in section 2D1.1.  Griggs contends that the court improperly converted the phenylacetic acid which he conspired to obtain to an amount of methamphetamine for sentencing under the Drug Quantity Table.  According to Griggs, the district court should have determined his sentence by using the weight of the phenylacetic acid for which he was responsible and the Chemical Quantity Table in section 2D1.11.  Griggs cites <u>United States v. Hoster</u>, 988 F.2d 1374 (5th Cir.

-5-

1993), to support his argument.  Griggs argues that he would have received a shorter sentence if the district court had used this method to calculate his sentence.

We reject Griggs' argument that the district court should have used the Chemical Quantity Table in sentencing him.  Griggs admitted that he and Harrington manufactured methamphetamine on his ranch approximately six times.  Thus, under subsection 2D1.11(c)(1), the district court was correct in using the Drug Quantity Table in section 2D1.1 because Griggs' offense involved the unlawful manufacture of methamphetamine and section 2D1.1 gives a higher base offense level than section 2D1.11.  USSG § 2D1.11(c)(1).

The district court was also correct in converting the phenylacetic acid for which Griggs was responsible to an amount of methamphetamine.  To find Griggs' base offense level on the Drug Quantity Table, the court must determine how much methamphetamine was involved in Griggs' drug conspiracy.  As the commentary to section 2D1.1 indicates, the court may look at the circumstances of Griggs' conspiracy to approximate the amount of methamphetamine.  USSG § 2D1.1, comment. (n.12).  In this case, the district court properly approximated the amount of methamphetamine by calculating how much methamphetamine Griggs could have produced from the phenylacetic acid he conspired to obtain.

Griggs cites Hoster to support his argument that the district court should have used the Chemical Quantity Table in section 2D1.11.  Hoster, however, is factually different from Griggs' situation.  Unlike Griggs, Hoster pleaded guilty to only possession of methamphetamine with intent to distribute.  Hoster, 988 F.2d at 1376.  Griggs pleaded guilty to a four-part conspiracy which consisted of conspiracy to possess phenylacetic acid with intent to manufacture methamphetamine and conspiracy to manufacture methamphetamine.  See id. at 1381; United States v. O'Leary, 35

F.3d 153, 155 (5th Cir. 1994) (per curiam). Additionally, we are not persuaded by Hoster's reasoning because the court in Hoster failed to discuss subsection 2D1.11(c)(1) and its impact on a defendant's sentencing. Hoster, 988 F.2d at 1380-83. Cf. O'Leary, 35 F.3d at 154-55. Nothing in Hoster leads us to conclude that the district court erred in sentencing Griggs.

## II.

Griggs argues that the government violated its plea agreement with him by allowing the district court to consider conduct outside the stipulated facts for his sentencing.

A district court must examine all the circumstances surrounding a convicted defendant's offense when sentencing under the Sentencing Guidelines. USSG § 1B1.3(a). The court can use conduct for which the defendant has not been convicted or charged in determining the defendant's sentence. USSG § 1B1.3(a); United States v. Galloway, 976 F.2d 414 (8th Cir. 1992) (en banc), cert. denied, 113 S. Ct. 1420 (1993). Additionally, any plea agreement entered into by the defendant and the government cannot limit the district court in examining the defendant's conduct for sentencing. USSG § 6B1.4(d); United States v. Lutfiyya, 26 F.3d 1468, 1469 (8th Cir. 1994) (per curiam).

The government, however, must abide by its plea agreement with a defendant. When a guilty plea rests in any significant degree on a promise of the government, so that it is part of the inducement or consideration, the government must fulfill that promise. Santobello v. New York, 404 U.S. 257, 262 (1971). Consequently, the defendant's plea agreement is fully binding on the government.

Griggs argues that the government violated its plea agreement with him during his sentencing by offering the court information outside of the stipulated facts contained in the plea agreement.

Griggs argues that the government should not have informed the district court about his instructions to Harrington to purchase twenty-five pounds of phenylacetic acid, his possession of a firearm, or his possession of methamphetamine during his January 2, 1994 arrest.  He also asserts that it was improper for the district court to use this information to sentence him.  Finally, Griggs argues that the district court should not have used conduct for which the government agreed not to charge him to increase his sentence.  Griggs objects to the district court's use of his possession of a firearm and his possession of methamphetamine during his 1994 arrest for sentencing because the government agreed not to charge him for that conduct.  Griggs cites <u>United States v. Nelson</u>, 837 F.2d 1519 (11th Cir.), <u>cert. denied</u>, 488 U.S. 829 (1988), in support of his argument.  Griggs failed to raise these arguments during his sentencing hearing, thus, we may reverse only for plain error.  <u>See</u> <u>Olano</u>, 113 S. Ct. at 1776-79.

The government did not violate its plea agreement with Griggs in this case.  First, the events of January 2, 1994, occurred after Griggs entered into his plea agreement with the government.  Second, nowhere in the plea agreement did the government agree to limit the information it would give the district court for sentencing.  Additionally, when the court asked Griggs if anyone had made any other offer, promise, or assurance of any kind outside of the written plea agreement to induce him to plead guilty, he said, "No."  Griggs' attorney stated in Griggs' presence that the plea agreement was the entire agreement between Griggs and the government. Later in the plea hearing, Griggs had an opportunity to speak to the court and he did not contradict his attorney's answer to the court's question. In light of these facts, we see no basis for concluding that the government violated its plea agreement with Griggs by providing the district court information outside of the stipulated facts.

The district court did not err in using Griggs' uncharged

conduct to determine Griggs' sentence. In determining Griggs' sentence, the district court must examine all of the relevant conduct of his offense, whether uncharged, charged, or charged and dismissed. USSG § 1B1.3(a). Griggs' plea agreement did not limit the government or the district court to the stipulated facts for determining his sentence. The district court was correct in considering all of Griggs' relevant conduct during its sentencing of Griggs.

The Eleventh Circuit's opinion in <u>Nelson</u> does not affect our conclusions in Griggs' case. In <u>Nelson</u>, the government promised the defendants that it would not deviate from a statement of stipulated facts in exchange for their guilty pleas. 837 F.2d at 1521. In this case, the government did not make such a promise to Griggs. Thus, <u>Nelson</u> is factually different from this case and does not change our analysis of Griggs' arguments.

## III.

Griggs argues that the district court violated Federal Rule of Criminal Procedure 32 by failing to adequately determine whether Griggs had an opportunity to read and discuss the presentence report with his attorney. The district court specifically asked Griggs' attorney at the sentencing hearing in Griggs' presence whether he had reviewed and discussed the presentence report with Griggs. Griggs' attorney answered that he had reviewed and discussed the report with Griggs. Later in the sentencing hearing, Griggs had an opportunity to speak to the court and he did not contradict his attorney's answers to the court's questions. We conclude that the district court complied with Rule 32. <u>See</u> <u>United States v. Mays</u>, 798 F.2d 78, 80 (3d Cir. 1986).

## IV.

In his reply brief, Griggs argues that the district court

erred in assuming that Griggs was responsible for dextro-methamphetamine, rather than levo-methamphetamine, and improperly sentenced him based on that assumption. The district court adopted the presentence report at the sentencing hearing. By doing so, the district court impliedly found that Griggs was responsible for dextro-methamphetamine.[2] We cannot say that it was plain error for the district court to make such a finding of fact. <u>Cf.</u> <u>United States v. Massey</u>, 57 F.3d 637, 638 (8th Cir. 1995) (per curiam); <u>United States v. Deninno</u>, 29 F.3d 572, 580 (10th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1117 (1995). <u>Contra</u> <u>United States v. Ramsdale</u>, 61 F.3d 825, 832 (11th Cir. 1995). Additionally, Griggs raises this argument for the first time in his reply brief to this court. Generally, we do not consider arguments raised for the first time in a reply brief, and there is no adequate reason to deviate from that rule in this case. <u>Weiner v. Eastern Ark. Planting Co.</u>, 975 F.2d 1350, 1357 n.6 (8th Cir. 1992).

We affirm the sentence imposed by the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]The district court only impliedly found that some portion of Griggs' methamphetamine was dextro-methamphetamine. Under subsection 2D1.1(c), the weight of a mixture of two controlled substances is assigned to the controlled substance that results in the greater offense level. USSG § 2D1.1(c), note *. Thus, the district court need only have found that some portion of Griggs' methamphetamine mixture was dextro-methamphetamine to sentence him for dextro-methamphetamine or "methamphetamine" using the full weight of the mixture.