**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard AICHELE, Defendant–
Appellant.**

**No. 90–10364.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 1991.

Decided July 30, 1991.

Arthur Wachtel, Horngrad & Wachtel, San Francisco, Cal., for defendant-appellant.

Donald W. Searles, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before ALARCON, KOZINSKI and RYMER, Circuit Judges.

RYMER, Circuit Judge:

A jury convicted Richard Aichele of conspiracy to manufacture methamphetamine, manufacture of methamphetamine, possession of phenyl–2–propanone and possession of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 844 & 846. He claims on appeal that his motions for judgment of acquittal and for a new trial should have been granted, that the government commit-

ted *Brady* violations mandating a new trial and that the district court improperly sentenced him. We affirm.

I

■ Aichele moved for a judgment of acquittal, claiming insufficiency of the evidence to convict him of conspiracy to manufacture methamphetamine, manufacture of methamphetamine and possession of phenyl–2–propanone (p–2–p). In considering a challenge to the sufficiency of the evidence, we decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original).

"To obtain a conviction for conspiracy, the government must first prove the existence of a conspiracy. Once the existence of the conspiracy is shown ... the government need only prove a 'slight' connection between the defendant and the conspiracy." *United States v. Baron,* 860 F.2d 911, 919 (9th Cir.1988), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 414 (1989) (citing *United States v. Penagos,* 823 F.2d 346, 348 (9th Cir.1987)).

■ The evidence was sufficient in this case for a rational trier of fact to conclude that Richard Aichele had at least a slight connection to the conspiracy, the existence of which he does not challenge. Evidence showed a connection, through business and family relationships, to the property at Melvina Avenue in Palermo, California, where government agents found a methamphetamine laboratory; several pieces of methamphetamine manufacturing laboratory equipment the agents discovered contained his fingerprints; Aichele's keys opened the lock on the barn containing the laboratory; and both his apartment and place of business contained the distinctive odor of p–2–p. Evidence also showed that the manufacture of methamphetamine at Melvina Avenue was current. Aichele proffers innocent explanations for many of his actions,

but such argument misses the mark; our inquiry is whether *any* reasonable jury could find the elements of the crime, on these facts, beyond a reasonable doubt, not whether Aichele is plausibly not guilty. " '[A] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. Acts which seem otherwise innocent, when viewed in the context of the surrounding circumstances, may justify an inference of complicity.' " *United States v. Calabrese,* 825 F.2d 1342, 1348 (9th Cir.1987) (quoting *United States v. Batimana,* 623 F.2d 1366, 1368 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980)). Even putting aside evidence of an inculpatory confession,[1] we hold that a reasonable trier of fact could conclude that Richard Aichele conspired to manufacture methamphetamine.

■ Because the manufacturing and p-2-p possession charges are foreseeable substantive offenses committed in furtherance of the conspiracy, Aichele is also properly responsible for them. *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489, 1496–97 (1946); *United States v. Murray,* 492 F.2d 178, 187 (9th Cir.1973), *cert. denied,* 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974).

## II

■ Aichele contends the government violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in failing to disclose, in a timely manner, impeachment materials relating to Harold Otis St. John, a government witness. We review challenges to a conviction based on an alleged *Brady* violation de novo. *United States v. Gordon,* 844 F.2d 1397, 1402 (9th Cir.1988).

■ "*Brady* does not necessarily require that the prosecution turn over exculpatory material *before* trial. To escape the

*Brady* sanction, disclosure 'must be made at a time when [the] disclosure would be of value to the accused.' " *Id.* at 1403 (emphasis in original; quoting *United States v. Davenport,* 753 F.2d 1460, 1462 (9th Cir. 1985)). In this case the government provided Aichele with a transcript of its interview with St. John and a copy of St. John's California rap sheet before trial. This disclosure was made at a meaningful time because a three-week holiday break in the trial gave Aichele ample opportunity to prepare its in-court examination of St. John. When a defendant has the opportunity to present impeaching evidence to the jury, as Aichele did here, there is no prejudice in the preparation of his defense. *See United States v. Shelton,* 588 F.2d 1242, 1247 (9th Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979). Even assuming the government's disclosure was incomplete and untimely, there was no *Brady* violation here. *See Gordon,* 844 F.2d at 1403 (substantial opportunity to use information at trial cures any prejudice caused by delayed disclosure).

■ When trial resumed on January 9, 1990, Aichele's counsel advised the court that the only impeachment material still sought was St. John's first California Department of Corrections file, which was under the control of California officials. The prosecution is under no obligation to turn over materials not under its control. *United States v. Gatto,* 763 F.2d 1040, 1049 (9th Cir.1985). When, as here, a defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression by the government. *United States v. Dupuy,* 760 F.2d 1492, 1501 n. 5 (9th Cir.1985) (citing *United States v. Griggs,* 713 F.2d 672, 674 (11th Cir.1983)).

## III

■ Aichele contends that his motion for a new trial should have been granted because of prejudice resulting from St. John's revelation that Aichele had been in prison

---

1. Aichele contends that testimony about a confession he made was perjured. We reject his

argument in Section IV of our opinion, *infra.*

in 1964. We review the district court's denial of a motion for a new trial for abuse of discretion. *United States v. Walgren*, 885 F.2d 1417, 1426 (9th Cir.1989). "The district court's 'discretion will not be disturbed unless we have "a definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." ' " *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985) (citations omitted).

■ Aichele argues that the revelation of his prior incarceration is tantamount to the improper admission of bad character evidence under Federal Rule of Evidence 404(b). The district court gave a prompt curative instruction, which we must assume the jury followed. *United States v. Johnson*, 618 F.2d 60, 62 (9th Cir.1980). Even if St. John's testimony constituted improperly admitted evidence of bad character, reversal would not be automatic. Prejudice from an evidentiary error, assuming there is one, might not rise to the level of reversible error, given the admissible evidence supporting the verdict and the trial court's curative instruction. *Id.* If the case against a defendant is very strong, though not overwhelming, and the reviewing court is unconvinced that the admission of the evidence influenced the outcome of the case, the court may uphold the verdict. *United States v. Wilson*, 536 F.2d 883, 886 (9th Cir.), *cert. denied*, 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976). In this action, the government presented a strong case against Richard Aichele and we are unconvinced that the testimony regarding his prior incarceration influenced the outcome. Therefore, even assuming there was evidentiary error, reversal is not warranted.

■ Aichele argues further that the government's line of questioning constituted prosecutorial misconduct because the question eliciting the testimony strayed from a line of questioning the trial judge suggested at a hearing on a motion in limine Aichele had filed. "To succeed on a motion for a new trial based on prosecutorial misconduct, a defendant must show first

that the prosecution engaged in improper conduct and second that it was more probable than not that the prosecutor's conduct 'materially affected the fairness of the trial.' " *United States v. Smith*, 893 F.2d 1573, 1583 (9th Cir.1990) (quoting *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir.1986)).

We need not consider whether there was misconduct in this case because, even assuming there was, the district court did not abuse its discretion in concluding that the conduct did not materially affect the fairness of the trial. The district judge's admonition to the jury to disregard the prior incarceration testimony was sufficient to avert prejudice to Aichele. *See United States v. Rush*, 749 F.2d 1369, 1372 (9th Cir.1984). The St. John testimony was not so extremely inflammatory and repetitive that it could not be cured by an admonition to the jury. *Cf. United States v. Gillespie*, 852 F.2d 475, 479 (9th Cir.1988) (extreme prejudice from admission of improper evidence of defendant's homosexuality could not be cured by admonition to jury). Although we disapprove of the prosecutor's failure to adhere to the line of questioning outlined by the district court, we conclude that given the character of the evidence against Aichele, the district court's prompt admonition to disregard the portion of St. John's testimony and the level of prejudice resulting from that testimony, we cannot say the district court committed a clear error in judgment in concluding there was insufficient prejudice to Aichele to warrant a new trial. There was therefore no abuse of discretion in denying his motion for a new trial.

## IV

Aichele claims that the district court should have granted his motion for mistrial because the government failed to ensure that St. John would not present perjured testimony. Aichele did not raise this argument before the district court. We therefore review his contention for plain error, which "is a highly prejudicial error affecting substantial rights." *United States v. Giese*, 597 F.2d 1170, 1199 (9th Cir.), *cert.*

*denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

 A prosecutor can never guarantee that a witness will not commit perjury. Her duty is to refrain from knowingly presenting perjured testimony and from knowingly failing to disclose "that testimony used to convict a defendant was false." *See United States v. Endicott,* 869 F.2d 452, 455 (9th Cir.1989). There is no showing here that the government failed in either duty. The alleged perjury Aichele claims—involving contact between St. John and Aichele between 1966 and 1989, including an inculpatory confession—was prompted by Aichele's cross-examination; even assuming the testimony was perjured, the government did not elicit it. Aichele's contention that other aspects of St. John's testimony were perjured is mere speculation. There was thus no highly prejudicial error relating to alleged perjury.

## V

 The district court sentenced Aichele to 365 months, to be followed by a five-year term of supervised release. Aichele challenges the court's application of the sentencing guidelines on two grounds, contending that he was improperly charged with a large quantity of drugs involved and that he should have been granted a reduction in offense level for acceptance of responsibility. We review "de novo the district court's application of the Sentencing Guidelines." *United States v. Lockard,* 910 F.2d 542, 543 (9th Cir.1990) (citation omitted). We must "accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e).

## A

 If 100 grams or more of methamphetamine were involved in Aichele's offenses, *see* 21 U.S.C. § 841(b)(1)(A)(viii), then his base offense level is 37, given his status as a career offender and the maximum penalty of life imprisonment. *See* U.S.S.G. § 4B1.1(A). If between 10 and 100 grams were involved, the maximum penalty would be 40 years, *see* 21 U.S.C. § 841(b)(1)(B)(viii), making the applicable career offender offense level a 34. *See* U.S.S.G. § 4B1.1(B). Aichele argues that the district court should not have imputed 200 kilograms of phenylacetic acid, a precursor chemical to methamphetamine, to him. He also contends that the conversion of that chemical into a quantity of methamphetamine for sentencing purposes was improper because, he claims, that quantity of the final product could not have been produced within the time frame of the conspiracy.

Aichele was convicted of, among other offenses, conspiracy to manufacture methamphetamine. Because coconspirators are responsible for acts their coconspirators commit in furtherance of the conspiracy, his sentence can properly reflect the quantity of substances deemed to be part of the conspiracy. *See United States v. Changa,* 901 F.2d 741, 744 (9th Cir.1990) (per curiam) (in sentencing defendant, district court properly considered amount of counterfeit currency seized from codefendant, when currency was part of conspiracy) (citing *United States v. Murray,* 492 F.2d 178, 187 (9th Cir.1973), *cert. denied,* 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974)). In this case, the 200 kilograms of phenylacetic acid were part of the conspiracy and it was reasonably foreseeable to the conspirators that someone would obtain it as a step toward the manufacture of the drug. *See* U.S.S.G. § 1B1.3(a)(1) & comment. (n.1).

The district court was bound to apply an offense level "as if the object of the conspiracy … had been completed." U.S.S.G. § 2D1.4(a). The object of this conspiracy was to manufacture methamphetamine. The quantity of methamphetamine that *could* have been produced from this conspiracy, which included the 200 kilograms of phenylacetic acid, was over 100 grams of methamphetamine. *See* § 2D1.4, comment (n. 2) (may consider "size or capability of any laboratory involved" in approximating quantity of controlled substance where amount seized does not reflect scale of offense). The district court did not err, therefore, in applying offense level 37.

Aichele's argument that the claimed quantity could not have been produced within the time frame of the conspiracy alleged in the indictment fails. A conspiracy to achieve a result is distinct from the result itself. If the government alleges the conspiracy took place within a certain time period, it does not necessarily follow that the result must fall within that same time period. The district court properly considered the quantity of drugs as though the object of the conspiracy, distinct from the conspiracy itself, was completed. It is irrelevant *when* that completion might have occurred.

**B**

■ Finally, Aichele argues that the district court erred in declining to award him credit for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 (reduction warranted if defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct"). "Whether a defendant has accepted responsibility for a crime is a question of fact which this court reviews for clear error. The district court's determination will not be disturbed 'unless it is *without foundation.*'" *United States v. Rosales,* 917 F.2d 1220, 1222 (9th Cir.1990) (quoting *United States v. Smith,* 905 F.2d 1296, 1301 (9th Cir.1990) (emphasis in original)).

Aichele exercised his right to remain silent at trial and refused to discuss his case with his probation officer. He did not make a statement at his sentencing hearing. Therefore, there was no indication of his contrition either before or after he was convicted. In the absence of any indicia of contrition, a reduction for acceptance of responsibility is unwarranted. *United States v. Skillman,* 922 F.2d 1370, 1378–79 (9th Cir.1990). The district court's finding that Aichele had not accepted responsibility was not without foundation and was therefore not clearly erroneous. The court prop-

erly declined to award a two-point reduction.[2]

AFFIRMED.

KOZINSKI, Circuit Judge, dissenting in part:

In pressing a legal doctrine to the limits of its logic, we sometimes reach a wholly incongruous result. When that incongruity amounts to a constitutional infirmity, we must reexamine the doctrine, or, at the very least, limit its reach so as to avoid the unconstitutional result.

**I**

After correctly disposing of Aichele's substantive claims, the majority turns to his arguments that he was improperly sentenced. I have no quarrel with the majority's decision that the offense involved 100 grams or more of methamphetamine. Majority op. at 766–67. I do have much difficulty, however, with the majority's conclusion that defendant was not entitled to a two-level reduction for acceptance of responsibility. I cannot say that my colleagues' reliance on *United States v. Skillman,* 922 F.2d 1370 (9th Cir.1991), is misplaced. Indeed, *Skillman* is only the last in a long line of cases consistently pointing in the same direction. Yet as applied to this defendant's situation, the *Skillman* line of reasoning leads to a patently unconstitutional result. Absent controlling authority that clearly requires this result—and neither *Skillman* nor its precursors reach quite so far—I believe we can and should avoid unconstitutionality by holding that the power of logic stops where the barriers erected by the Constitution begin.

**II**

There is a hoary tradition in sentencing law that permits district judges to take into account a convicted defendant's acceptance of responsibility in imposing sentence. *Corbitt v. New Jersey,* 439 U.S. 212, 223,

**2.** Our colleague in dissent suggests that Aichele's failure to accept responsibility could have cost him six years on his sentence. Not necessarily. Aichele's guidelines, based on an offense level of 37 and a criminal history of VI, were 360 months to life; with the two-point offense level reduction, they would have been 292–365 months. In either case, his 365–month sentence would have been within the guideline range.

99 S.Ct. 492, 499, 58 L.Ed.2d 466 (1978) ("it is not forbidden to extend a proper degree of leniency in return for guilty pleas"); *United States v. Chavez,* 627 F.2d 953, 956 (9th Cir.1980) (following *Corbitt*). The sentencing guidelines have regularized this practice by authorizing a two-level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. How much contrition a defendant must show for his crime varies somewhat with the sensibilities of the sentencing judge, but there is an irreducible minimum that every acceptance of responsibility must contain: The defendant must admit his criminal culpability. *Id.* ("If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels."); *Skillman,* 922 F.2d at 1378–79 & n. 11 (defendant who refuses to testify and after conviction refuses to accept responsibility for crime for which he was convicted has shown no contrition and may not be awarded two-level reduction); *United States v. Oliveras,* 905 F.2d 623, 629 (2d Cir.1990) (per curiam) (defendant "must accept responsibility for all facets of the crime to which he either pled guilty or of which he was convicted").

This requirement puts defendants like Aichele in a really tight box. Aichele, it will be recalled, did not testify at his trial and has maintained his innocence all along. At the same time, he preserved for appeal several non-frivolous, substantive issues. While Aichele will learn today that his claims of error were to no avail, he was justified in harboring a more than ephemeral hope that his conviction would be reversed and that he would be acquitted after an error-free trial.

Life is not always fair, however, and a defendant must suffer his sentence before he can take an appeal, much less learn of its outcome. If a defendant like Aichele wants to be eligible for the two-level reduction for acceptance of responsibility, he must break his silence and tell the judge all about how he done the dirty deed and how sorry he is about it. A defendant is well advised to play his part in this mini-morali-ty play, because a two-level reduction can mean a lot of time off his sentence: In this case we're talking about more than six years.

By accepting responsibility, however, a defendant effectively waives his right to an appeal and a retrial for, having uttered the words incriminating himself, he can never take them back. Should he press on with his appeal and obtain a reversal, the prosecution would be entitled to retry the defendant, using as evidence his heart-felt confession and words of contrition. *See United States v. Perez–Franco,* 873 F.2d 455, 460–61 (1st Cir.1989); *United States v. Piper,* 918 F.2d 839, 840–41 (9th Cir.1990) (per curiam) (following *Perez–Franco*); *Oliveras,* 905 F.2d at 626 (defendant's statements to probation officer in presentence proceedings admissible in subsequent criminal prosecutions unless immunized); *United States v. Rogers,* 899 F.2d 917, 924–25 (10th Cir.1990) (acceptance of responsibility is admissible in subsequent criminal proceedings); *United States v. Gordon,* 895 F.2d 932, 936 (4th Cir.1990) (admission to probation officer can be used against defendant after successful appeal). Why then bother with a retrial? Indeed, why bother with an appeal? For what jury would acquit a defendant who has uttered a confession with such fervor as to persuade a district judge that he accepted "personal responsibility for his criminal conduct"?

A defendant is thus put to a brutal choice between obtaining a shorter sentence and giving up his right to appeal, and preserving intact his right to appeal but giving up the opportunity to plead for a more lenient sentence. I realize that criminal trials are not for the faint of heart and that criminal defendants often must choose among unpalatable alternatives but this, it seems to me, goes too far.

### III

Our cases have relied on two rationales in reconciling the tension between a defendant's right not to incriminate himself and the legal system's proclivity for rewarding those who fess up. The first is the notion

that reduction of a sentence for acceptance of responsibility is merely the granting of a benefit, not the denial of a right. *See, e.g., United States v. Gonzales*, 897 F.2d 1018, 1021 (9th Cir.1990); *Skillman*, 922 F.2d at 1379 n. 11. Presumably, a benefit may be denied pretty much for any reason, no matter how that denial might affect the exercise of the defendant's constitutional rights.

There is not much one can really say about this line of reasoning, except that it will persuade only those who are already persuaded. As Judge Reinhardt has pointed out, whether a sentencing disparity is viewed as a burden or a benefit depends "upon whether the shorter sentence is compared to the longer or the longer to the shorter." *United States v. Carter*, 804 F.2d 508, 517 (9th Cir.1986) (dissent). In any event, the limits of this rationale are surely reached where a defendant is required to give up the "benefit" of a shorter sentence in order to preserve his right to an effective appeal. *See, e.g., Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) (state may not disqualify contractors from working for public agencies because they refuse to waive fifth amendment rights); *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (state may not threaten loss of public employment); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968) (same); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) (same).

The second rationale employed by our cases in rejecting similar claims by criminal defendants might be characterized as the rough-and-tumble theory of justice: While "Section 3E.1.1 may add to the dilemmas facing criminal defendants, ... no good reason exists to believe that 3E.1.1 was intended to punish anyone for exercising rights." *Gonzales*, 897 F.2d at 1021 (quoting *United States v. Henry*, 883 F.2d 1010, 1011 (11th Cir.1989)). In *Gonzales*, the defendant claimed that section 3E1.1 burdened his right to testify at trial because, once having proclaimed his innocence before the jury, it would be difficult to then turn around at sentencing and admit his guilt to the judge. Following the lead of the Eleventh Circuit in *Henry*, we rejected that argument: "The pursuit by a defendant of a trial strategy of denying culpability may lower his chances of obtaining the reduction under Section 3E1.1 but these consequences do not constitute an infringement of the fifth amendment privilege against self-incrimination." *Id.*

*Gonzales* and *Henry* are perhaps best understood as cases where there was no more than a tension between the defendant's right to testify at trial and his hope for a reduced sentence. Exercising the right to testify might lower a defendant's chances of getting the reduction, but it would not render it absolutely impossible. Presumably a defendant could try to obtain an acquittal by protesting his innocence and then later come clean and bow and scrape before the district judge in seeking a reduced sentence. It would be tough but, one might maintain, it would not be impossible. The limit of this logic too seems to be reached where it becomes impossible to obtain the sentence reduction *and* preserve the right to an effective appeal.

Admittedly, we came very close in *Skillman* to approving the result we reach today. Skillman, like Aichele, refused to testify at trial and persisted in maintaining his silence even after the jury found him guilty. Finding that "there was no indication of contrition on the part of Skillman before or after he was convicted," we reversed the district court's order granting a two-level reduction for acceptance of responsibility. 922 F.2d at 1379. *Skillman* is factually indistinguishable from this case and I cannot blame my colleagues for relying on it.

Nevertheless, there is no indication that *Skillman* considered and rejected the argument Aichele makes today. Indeed, in a footnote, *Skillman* distinguished *United States v. Watt*, 910 F.2d 587, 592 (9th Cir. 1990), where we held that "a sentencing court cannot consider against a defendant any constitutionally protected conduct...." *Skillman*, 922 F.2d at 1379 n. 11. Had

Skillman articulated the argument that Aichele makes, the *Skillman* court would not have dismissed it so lightly. In any event, *Skillman* does not address the issue and I am reluctant to say that a significant constitutional argument will be deemed foreclosed by silence in an earlier case where it is not at all clear that the argument was even presented.

## IV

There does remain the hard fact that defendant has never admitted his guilt and begged forgiveness, as the Guidelines require. I agree with my colleagues that we cannot simply give defendant the benefit of the two-level reduction without requiring that he subject himself to the self-flagellatory ritual contemplated by the Guidelines; even then the district judge would have to exercise his discretion whether or not to grant the reduction. All of this, of course, is beyond our competence.

This is not an insuperable problem, however. Having once resolved Aichele's appeal against him, there is now no impediment to his attempt to comply with the requirements of Guideline 3E1.1. I would therefore vacate his sentence and remand with instructions that the district court give defendant an opportunity to qualify for the two-level reduction for acceptance of responsibility. This, it seems to me, is a simple solution, one that reconciles all of the government's legitimate interests and one that preserves the defendant's constitutional rights. It's not too much to ask for.