# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 51915-1-II |
| TYRONE EAGLESPEAKER | |
| Petitioner. | UNPUBLISHED OPINION |

LEE, C.J. — In this personal restraint petition (PRP), Tyrone Eaglespeaker seeks to have his second degree rape conviction vacated and a new trial ordered based on newly discovered evidence that (1) the victim had falsified rape allegations in Oregon prior to his trial and (2) an exculpatory witness had observed Eaglespeaker and the victim kissing hours before the rape. He also argues that the State violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), when it failed to disclose this evidence to him. We deny Eaglespeaker's petition.

## FACTS[1]

### A. BACKGROUND FACTS

In December 2012, Deputy Christian Lyle responded to a reported rape and burglary in Skamania County. When he arrived on scene, the caller, J.R.,[2] told Deputy Lyle that her friend's boyfriend, Eaglespeaker, had entered her apartment without her permission and raped her.

---

[1] The background facts are taken from this court's opinion in *State v. Eaglespeaker*, No. 44998-6-II (Wash. Ct. App. May 12, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2044998-6-II%20%20Unpublished%20Opinion.pdf.

[2] We use J.R.'s initials to protect her privacy.

The State charged Eaglespeaker by amended information with first degree rape, first degree burglary, possession of a controlled substance - methamphetamine, and use of drug paraphernalia.[3] The following evidence was presented at trial: J.R. and Eaglespeaker exchanged several text messages throughout the evening of December 19 and into the early morning hours of December 20. J.R. fell asleep around 3:30 a.m. on December 20. She awoke to find Eaglespeaker standing in her bedroom. Eaglespeaker forced himself on top of J.R. and penetrated her vagina with his fingers. J.R. did not call the police immediately because she had used drugs and feared that Child Protective Services (CPS) might take her children away. After J.R. called the police, Eaglespeaker admitted to law enforcement that he "finger banged" J.R. *Eaglespeaker*, No. 44998-6, slip op. at 3.

At the State's request, and over Eaglespeaker's objection, the trial court instructed the jury on the lesser included offense of second degree rape. The jury found Eaglespeaker guilty of second degree rape and the drug charges, and not guilty of first degree burglary.

Eaglespeaker appealed, and on May 12, 2015, we affirmed his convictions in an unpublished opinion. On November 13, we issued the mandate to the trial court.

B. PRP FACTS

On February 23, 2016, Eaglespeaker filed a motion for relief from judgment under CrR 7.8(b)(2)[4] and (5)[5]. Eaglespeaker argued that he was entitled to a new trial based on newly

---

[3] The drug charges were based on evidence discovered through further investigation of Eaglespeaker and are not at issue in this PRP.

[4] CrR 7.8(b)(2) provides relief for "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under [CrR] 7.5."

[5] CrR 7.8(b)(5) provides relief for "[a]ny other reason justifying relief from the operation of the judgment."

2

discovered evidence that J.R. had fabricated a rape allegation in Oregon in 2011. He also claimed that he had learned of an exculpatory witness, Russell Helm, who could have testified to seeing Eaglespeaker and J.R. kissing on J.R.'s couch the evening before the rape allegedly occurred. Eaglespeaker further argued that the State had violated its *Brady* obligations by not disclosing J.R.'s 2011 false rape allegation or information about Helm prior to trial.

In support of his motion, Eaglespeaker filed Exhibit A, which is a report from the Beaverton, Oregon Police Department detailing J.R.'s false rape allegation made in 2011. In 2011, J.R. reported that two males had broken into her Oregon apartment, assaulted her, and raped her with a pair of scissors. J.R. later admitted to law enforcement that she had fabricated the entire incident and had inflicted the injuries on herself.

Eaglespeaker also supported his motion with Exhibit B, which is a letter from the Skamania Prosecuting Attorney's Office to his appellate counsel dated February 14, 2014. In this letter, the prosecutor explained that he had interviewed Helm as a witness in a separate criminal case in which J.R. was an alleged victim. The prosecutor also provided his personal notes detailing the conversation he had with Helm, attached as Exhibit C to Eaglespeaker's PRP. The notes contained the prosecutor's interpretation of what Helm said about the night of the rape:

> Tried telling Deputy Hepner at the time—don't know why he did not speak to me— I had information on the other case (i.e. Eaglespeaker)—I was there at supposed rape—she was hanging out with Eaglespeaker the whole time—every night—when her boyfriend was in jail—an hour before—no 10:30 PM—the night of the supposed rape—she was sitting on the couch cuddling and kissing Eaglespeaker— hanging out for two weeks with him—shocked me.

PRP Ex. C at 1.[6]

---

[6] We note that the Exhibit C of the PRP does not contain page numbers. For our purposes we will number the pages of Exhibit C 1-3 starting with the first page of the exhibit.

Eaglespeaker also provided a declaration from Helm stating in part:

> 4.   In the several days preceding the alleged rape, I witnessed the Defendant (whose name I did not know until recently), at her apartment. I observed them together on the couch and other locations in the apartment having physical relations, such as kissing and touching.
>
> . . . .
>
> 7.   When I entered the apartment, I observed the Defendant . . . holding . . . [J.R.] on the couch. They appeared to be lounging on one another.
>
> 8.   She did not ask the Defendant to leave or otherwise show any signs of alarm. (I saw the defendant leave and return later the same night, and walk through the front door.)
>
> . . . .
>
> 10.   Several days later I learned of the rape allegations. I immediately believed them to be false because [J.R.] also falsely accused my wife of assaulting her, which was ultimately dismissed by Skamania County.
>
> . . . .
>
> 12.   I told the deputy that I did not believe a rape could have occurred because I had observed the alleged victim and the defendant in close physical contact on the couch on the evening that the rape allegedly occurred.

Decl. of Gregory S. Cheney, Ex. A at 1-2 (Decl. of Russell Helm).

Eaglespeaker further supported his motion with Exhibit D, which is a 2013 report from the Beaverton, Oregon Police Department. The Oregon detective wrote in the report that two witnesses contacted him and provided a video copy of a child dependency proceeding in Skamania County that took place on April 10, 2013. The report states that at the 2013 dependency hearing, J.R. admitted that she had falsified rape allegations in January 2011.

Eaglespeaker also provided evidence that allegedly showed the prosecutor was aware that J.R. had a fabricated rape allegation in 2011. At a pretrial motion in limine hearing on April 22, 2013, the prosecutor noted that he "actually stepped into the dependency hearing [on April 12,

4

2013] that a lot of this was based on and have been in regular touch with [defense counsel] about the issue." Verbatim Report of Proceeding (VRP) (April 22, 2013) at 5. The prosecutor stated that he understood the facts as

> a domestic violence incident where I think, [defense counsel] can correct me if I'm wrong, but my understanding is [J.R.] was basically covering for the perpetrator. She was basically feeling like she—sort of acting in a way like a stereotypical or a kind of the domestic violence dynamic that we talk about.

VRP (April 22, 2013) at 9. The prosecutor noted, "It might be different if there was a prior admission to perjury where she accused someone of an incident like this and then later said that she lied about it." VRP (April 22, 2013) at 10. The prosecutor also noted that defense counsel was "actually probably in a better position than I am on this because he was an attorney in that hearing and knows much more about it than I do." VRP (April 22, 2013) at 3.[7]

Eaglespeaker further provided emails and an exemptions list[8] between Department of Social and Health Services (DSHS), the Skamania County Sheriff's Office, and the Attorney General's Office related to incident number 13-02315, in which the foster parent of J.R.'s children was caught with marijuana in their car. Eaglespeaker also submitted evidence of a Skamania County Prosecutor's Office child abuse report related to J.R. of an incident that occurred on May 31, 2013.[9]

---

[7] There is a discrepancy in the date of the dependency hearing in question. The Beaverton, Oregon Police Department report and the Declaration of Gregory Cheney in Support of Motion for Relief state that the dependency hearing was on April 10, 2013. But at an April 22, 2013 hearing, the prosecutor discussed a dependency hearing that occurred on April 12, 2013. It is unclear from the record whether these are the same hearing or different dependency hearings.

[8] List of public records exemptions commonly applicable to Attorney General's Office records.

[9] This evidence was submitted with a Supplemental Affidavit in Support of Motion for Relief from Judgment Transferred as a PRP. It was filed on June 14, 2019.

The trial court found that Eaglespeaker had failed to establish a prima facie case that the State had committed a *Brady* violation. It also found that Eaglespeaker had failed to meet the requirements for newly discovered evidence to warrant a new trial because the information regarding J.R.'s prior false rape allegation was merely cumulative or impeaching, and the information related to Helm was previously discoverable through the exercise of due diligence. Accordingly, the trial court denied Eaglespeaker's motion for a new trial and transferred the motion to this court for consideration as a PRP in accordance with CrR 7.8(c)(2).[10]

ANALYSIS

Eaglespeaker argues that he should be granted a new trial based on the newly discovered evidence that J.R. had falsified rape allegations in Oregon in 2011 and that Helm had observed Eaglespeaker and J.R. kissing hours before the rape. He also maintains that relief from judgment is warranted because the prosecuting attorney violated his *Brady* obligations when he failed to disclose this evidence. We disagree.

A.    STANDARD OF REVIEW

To be entitled to relief on a PRP, a petitioner must show (1) actual and substantial prejudice by a constitutional error, or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). "Relief by way of a collateral challenge to a conviction is extraordinary,

---

[10]  Under CrR 7.8(c)(2),

> The court shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing.

and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011) (citing *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990)).

Whether based on a constitutional or nonconstitutional error, a petitioner must state with particularity the factual allegations that underlie his claim of unlawful restraint. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015). Bald assertions and conclusory allegations are insufficient to warrant relief. *Id..* And the petitioner's allegations must have evidentiary support. *Id.* "'If the petitioner's evidence is based on knowledge in the possession of others, he may not simply state what he thinks those others would say, but must present their affidavits or other corroborative evidence.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488-89, 251 P.3d 884 (2010) (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert denied*, 506 U.S. 958 (1992)).

A PRP will be denied if the petitioner fails to make a prima facie showing of either actual and substantial prejudice from a constitutional error or a fundamental defect from a nonconstitutional error. *Schreiber*, 189 Wn. App. at 113. A PRP will be granted if we are convinced that the petitioner has proven actual and substantial prejudice or a fundamental defect. *Id*.

B.    NEWLY DISCOVERED EVIDENCE

Eaglespeaker argues that a new trial is warranted in light of the newly discovered evidence of J.R.'s 2011 false rape allegation and Helm's observations on the night of the rape.[11] We disagree.

---

[11] Eaglespeaker provides argument in his Second Statement of Supplemental Authorities. Under RAP 10.8, "A party or amicus curiae may file a statement of additional authorities. The statement

1.    Legal Principles

To be entitled to a new trial based on a claim of newly discovered evidence, the petitioner must show that the evidence (1) will probably change the outcome of the trial, (2) was discovered after trial, (3) could not have been discovered before trial through the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 569, 397 P.3d 90 (2017). Absence of any one of these five factors is sufficient grounds to deny a new trial. *In re Pers. Restraint Faircloth*, 177 Wn. App. 161, 166, 311 P.3d 47 (2013).

Under RAP 16.4(c)(3), a claim of unlawful restraint may be based on the existence of material facts that have not previously been presented and that, in the interest of justice, require that the conviction be vacated. For matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence based on more than speculation, conjecture, or inadmissible hearsay to establish the facts that entitle him to relief. *In re Pers. Restraint Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013); *Rice*, 118 Wn.2d at 886.

2.    Evidence Considered

Eaglespeaker argues that he is entitled to a new trial based on the newly discovered evidence that J.R. falsified a rape allegation in 2011. Eaglespeaker relies on the following "new" evidence in support of his argument that the victim, J.R., fabricated the rape for which he was convicted: a Beaverton, Oregon Police Department report; a letter from the Skamania Prosecuting Attorney's Office to Eaglespeaker's appellate attorney; the prosecutor's personal notes detailing the conversation he had with Russell Helm, a witness; a 2013 report from the Beaverton, Oregon

should not contain argument, but should identify the issue for which each authority is offered." However, based on our prior orders, we consider the arguments raised in Eaglespeaker's Second Statement of Supplemental Authorities.

Police Department detailing how the victim, J.R. perjured herself at a grand jury hearing in a 2009 assault case; and Helm's declaration.

Exhibits A through D are inadmissible hearsay and thus are not competent admissible evidence. ER 801(c); *Rice*, 118 Wn.2d at 886; *Yates*, 177 Wn.2d at 18. Also, Eaglespeaker acknowledges that the only value of the evidence is for impeachment purposes. Thus, even if Exhibits A through D were admissible, Eaglespeaker fails to show that this evidence is not merely cumulative or impeaching, and he is not entitled to a new trial on this basis.

3.      Admissible Evidence Does Not Support Granting a New Trial

Eaglespeaker fails to show that he could not have discovered the evidence related to the disclosure of J.R.'s 2011 false rape allegation prior to his trial through the exercise of due diligence. His defense counsel was at the April 2013 dependency hearing, which was a month before Eaglespeaker's trial began and which was where J.R. allegedly testified about her 2011 false rape allegation. Thus, defense counsel would have been aware of and could have discovered through the exercise of due diligence that the 2011 false rape allegation was impeaching evidence.

As to Helm being a potential exculpatory witness, Eaglespeaker fails to show that he could not have discovered this evidence prior to trial through the exercise of due diligence.[12] Helm's

---

[12] The State argues that Helm's declaration should be considered a subsequent personal restraint petition under RCW 10.73.140. RCW 10.73.140 states,

> If a person has previously filed a petition for personal restraint, the court of appeals
> will not consider the petition unless the person certifies that he or she has not filed
> a previous petition on similar grounds, and shows good cause why the petitioner
> did not raise the new grounds in the previous petition.

However, the plain language of RCW 10.73.140 does not support the State's position because Helm's declaration was filed in support of Eaglespeaker's existing petition and does not refer to the filing of an additional petition.

declaration states that he saw J.R. and Eaglespeaker in close physical contact on the couch on the evening that the rape occurred. If true, Eaglespeaker would have been aware that someone was at the apartment the night he raped J.R. and could have discovered through the exercise of due diligence that Helm was a potential defense witness. Additionally, the evidence of J.R. and Eaglespeaker kissing and touching on the couch does not demonstrate that Eaglespeaker did not rape J.R. Therefore, this evidence could have been discovered through the exercise of due diligence before trial and is not material and not a basis to grant a new trial. *See In re Pers. Restraint of Lui*, 188 Wn.2d 525, 569.

Further, Eaglespeaker points to J.R.'s testimony that she did not leave her front door unlocked versus Helm's declaration saying that he saw Eaglespeaker walk through the front door. This is merely impeaching evidence.

The admissible evidence Eaglespeaker relies on are merely impeaching, could have been discovered through the exercise of due diligence, and are not material. Thus, Eaglespeaker is not entitled to a new trial. Because Eaglespeaker fails to show actual and substantial prejudice from a constitutional error or a fundamental defect from a nonconstitutional error, his challenge based on newly discovered evidence fails.

C.    *BRADY* OBLIGATIONS

Next, Eaglespeaker claims that a new trial is warranted because the State's failure to disclose information related to J.R.'s 2011 false rape allegation and Helm constitutes a *Brady* violation. We disagree.

1.      Legal Principles

In *Brady*, the United States Supreme Court outlined the government's disclosure requirements in a criminal prosecution: "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Violation of the rule promulgated in *Brady* is a violation of a defendant's constitutional due process rights. *State v. Mullen*, 171 Wn.2d 881, 893, 259 P.3d 158 (2011). "'The animating purpose of *Brady* is to preserve the fairness of criminal trials.'" *Id.* at 895 (quoting *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir.2006), *cert. denied*, U.S. 1125 (2007)).

To establish a *Brady* violation, the defendant must demonstrate (1) the evidence at issue was favorable to the accused, (2) the State suppressed the evidence, either willfully or inadvertently, and (3) the suppression resulted in prejudice. *Id*. Favorable evidence under *Brady* includes both exculpatory and impeachment evidence. *State v. Davila*, 184 Wn.2d 55, 70, 357 P.3d 636 (2015).

*Brady* obligations include evidence contained in the prosecutor's file, as well as evidence in the possession of the police and others working on the State's behalf. *Mullen*, 171 Wn.2d at 895. However, "'[t]he prosecution is under no obligation to turn over materials not under its control.'" *Id.* (quoting *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991)). Though the prosecutor must disclose information within the possession or control of law enforcement personnel, "'it has no duty to volunteer information that it does not possess or of which it is unaware.'" *Id.* (quoting *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 824 (9th Cir.), *cert. denied*, 471 U.S. 1139 (1985)). Additionally, a prosecutor only has "the duty to learn of evidence favorable to the defendant that is known to others acting on behalf of the government *in a*

*particular case.*" *In re Pers. Restraint of Brennan*, 117 Wn. App. 797, 804, 72 P.3d 182 (2003) (emphasis added).

    2.      False Rape Allegation[13]

        a.       Imputing knowledge on the prosecutor

Eaglespeaker claims that knowledge held by others should be imputed on the prosecutor and thus, the prosecution suppressed evidence favorable to him "by failing to turn over evidence of the victim's prior recantation and statements by an exculpatory witness in the possession of police working the case." PRP at 14. We disagree.

Eaglespeaker identifies the parties with knowledge of J.R.'s 2011 false rape allegation as the Beaverton, Oregon Police Department, Skamania County Sheriff's Office, DSHS, and the State Attorney General's Office. Eaglespeaker argues that knowledge held by these entities must be imputed on the prosecutor that handled his rape case. But Eaglespeaker provides no authority supporting his claim that the prosecutor can be imputed knowledge held by the Beaverton, Oregon Police Department, DSHS, or the State Attorney General's Office. And Eaglespeaker provides no evidence that the Beaverton, Oregon Police Department, DSHS, or the State Attorney General's Office was working with the Skamania Prosecuting Attorney's Office on Eaglespeaker's rape case or had contacted the Skamania Prosecuting Attorney's Office prior to Eaglespeaker's trial about J.R.'s 2011 false rape allegation in Oregon.

---

[13] Although we do not consider Exhibits A through D in the context of newly discovered evidence entitling a petitioner to a new trial as discussed above, we do consider Exhibits A through D, as well as other evidence Eaglespeaker relies on, for his *Brady* arguments. This is because the standard of determining materiality is different in the context of *Brady* than in the context of newly discovered evidence. *Mullen*, 171 Wn.2d at 905-06.

Also, Eaglespeaker provides no support for his claim that the Skamania County Sheriff's Office (the police working Eaglespeaker's rape case) had knowledge that J.R. made a false rape allegation in 2011 in Oregon. Similarly, Eaglespeaker provides no support for imputing any knowledge DSHS or the State Attorney General's Office may have had in a dependency proceeding onto the Skamania County prosecutor prosecuting his rape case.

        b.      Constructive knowledge

Eaglespeaker argues that the prosecutor "likely had constructive knowledge" of J.R.'s 2011 false rape allegation in Oregon because "it is possible, albeit unlikely, that the report from the Beaverton Police Department had been transmitted to Skamania County." PRP at 16. Therefore, Eaglespeaker argues, constructive knowledge of the information in the Beaverton, Oregon Police Department report should be imputed to Skamania County prosecutor prosecuting his rape case. Eaglespeaker also argues that "exculpatory and impeaching material in the hands of the Attorney General's Office or the Department of Social and Health Services should be imputed to the Skamania County Prosecuting Attorney's Office for purposes of this case." Second Statement of Supp. Authorities at 1.

"Though *Brady* obligations can extend to individuals beyond prosecutors and police, at some point the connection between the nondisclosure and the State becomes too remote for the underlying rationale of *Brady* to apply." *Mullen*, 171 Wn.2d at 901 (internal citation omitted). Whether an individual is a state actor for purposes of *Brady* is a fact-specific inquiry. *Id.* at 901-02.

Here, for his claim that the prosecutor had constructive knowledge of J.R.'s 2011 false rape allegation in Oregon, Eaglespeaker relies on a 2013 Beaverton, Oregon Police Department report in which an Oregon detective writes that he watched footage of a Skamania County dependency

proceeding in which "an attorney" questioned J.R. about her 2011 false rape allegation. PRP Ex. D at 1.[14] However, this report contains no information regarding who the attorney was or who the attorney represented. And though the Oregon detective describes the hearing as a dependency proceeding, the detective also refers to the hearing as a "child custody hearing." PRP Ex. D at 1. Thus, this report alone does not contain sufficient facts to determine whether the attorney referenced in the report was a State actor for purposes of *Brady*. And this report fails to show that the Beaverton, Oregon Police Department was acting on behalf of the Skamania Prosecutor's Office. Thus, Eaglespeaker fails to show that the Skamania prosecutor had constructive knowledge of J.R.'s 2011 false rape allegation based on the 2013 Beaverton, Oregon Police Department report.

Eaglespeaker attempts to suggest that J.R. delayed making the rape allegations against him because she was worried that her drug use would lead the police to call CPS. He contends that this is evidence of the "relationship between law enforcement and Child Protective Services," and the prosecution's imputed knowledge of her prior false rape allegation. Second Statement of Add'l Authority at 1-2. But the fact that the police could call CPS does not show that the prosecution knew about her prior rape allegation or that the police or CPS was acting on the prosecutor's behalf in Eaglespeaker's rape case. The connection between the police's ability to call CPS is too remote for the underlying rationale of *Brady* to apply.

---

[14] We note that the Exhibit D of the PRP does not contain page numbers. For our purposes we will number the pages of Exhibit D 1-3 starting with the first page of the exhibit.

Eaglespeaker relies on evidence of emails and an exemptions list between DSHS and the Skamania County Sheriff's Office. These emails are related to incident 13-02315. The Skamania County Sheriff's Office Master Call Table shows that incident 13-02315 relates to the foster parent of J.R.'s children having marijuana in their car. But the emails do not relate to Eaglespeaker or to J.R.'s 2011 false rape allegation.

Eaglespeaker also relies on a copy of a Skamania County Prosecutor's Office child abuse report related to J.R. But this report relates to a child abuse incident that occurred on May 31, 2013, after the dependency hearing on April 10, 2013 and after Eaglespeaker's trial from May 13 to May 15, 2013.

Eaglespeaker cites to *Davila* to argue that the prosecutor here had constructive knowledge of J.R.'s 2011 false rape allegation. PRP at 16. However, *Davila* is readily distinguishable.

In *Davila*, the State failed to disclose that a forensic scientist who had worked on the defendant's case had been fired for incompetence. 184 Wn.2d at 60. The court held that this knowledge could be imputed on the prosecutor who had worked with the forensic scientist on the defendant's case because the state crime lab is an arm of the State. *Davila*, 184 Wn.2d at 71. The *Davila* court never held that knowledge in the possession of an out of state law enforcement agency could be imputed to a prosecutor in a different state. And here, there is no evidence that the Beaverton, Oregon Police Department; the State Attorney General's Office; or DSHS were working with the Skamania County Prosecuting Attorney's Office, or working on its behalf, in investigating Eaglespeaker's rape case.

c.      Actual knowledge

Eaglespeaker appears to argue that the Skamania County Prosecutor's Office had actual knowledge of J.R.'s 2011 false rape allegation. Eaglespeaker argues that because the prosecutor "'actually stepped into the dependency hearing'" he knew about the 2011 false rape allegation. Second Statement of Add'l Authority at 2 (quoting VRP (April 22, 2013) at 5).

But Eaglespeaker fails to support his claim that the prosecutor had actual knowledge of the 2011 false rape allegation. Eaglespeaker does not show when during the proceedings the prosecutor was present or that the prosecutor was present for the entire hearing. Also, the prosecutor stated at a motion in limine hearing during Eaglespeaker's rape case that he understood the facts at the hearing involved

> a domestic violence incident where I think, [defense counsel] can correct me if I'm wrong, but my understanding is [J.R.] was basically covering for the perpetrator. She was basically feeling like she—sort of acting in a way like a stereotypical or a kind of the domestic violence dynamic that we talk about.

VRP (April 22, 2013) at 9. Additionally, the prosecutor stated that hypothetically, "It might be different if there was a prior admission to perjury where she accused someone of an incident like this and then later said that she lied about it." VRP (April 22, 2013) at 10. This shows that the prosecutor did not know about J.R.'s 2011 false rape allegation. Thus, Eaglespeaker has provided no evidence that the prosecutor had actual knowledge of J.R.'s 2011 false rape allegation.

d.      Defense knowledge

There is no suppression under *Brady* if the undisclosed information was available through the defendant's exercise of reasonable due diligence. *Mullen*, 171 Wn.2d at 903. Eaglespeaker's defense counsel was present in the courtroom during the April 2013 dependency hearing in which J.R. allegedly admitted to making the 2011 false rape allegation. The dependency hearing occurred

a month before Eaglespeaker's trial began. Thus, Eaglespeaker's counsel likely had knowledge of the potentially exculpatory evidence. At the very least, had the defense exercised reasonable due diligence, Eaglespeaker could have learned that J.R.'s testimony was potentially exculpatory evidence.

3.      Alleged Exculpatory Witness

There is no suppression under *Brady* if the undisclosed information was available through the defendant's exercise of due diligence. *Mullen*, 171 Wn.2d at 903. As discussed above, through reasonable due diligence, Eaglespeaker could have learned that Helm was a potential defense witness because Helm had stopped by J.R.'s apartment and observed Eaglespeaker and J.R. together on J.R.'s couch kissing the evening the rape occurred. Furthermore, evidence of J.R. and Eaglespeaker kissing on the couch does not demonstrate that Eaglespeaker did not rape J.R. later. Thus, Eaglespeaker's challenge based on Helm fails.

Because Eaglespeaker fails to show that the prosecutor had any knowledge, imputed, constructive, or actual, of J.R.'s 2011 false rape allegation and because Eaglespeaker could have discovered both evidence of the 2011 false rape allegation and Helm with the exercise of reasonable due diligence, Eaglespeaker fails to show that the prosecutor violated *Brady* by suppressing evidence favorable to him. Therefore, Eaglespeaker's challenge based on *Brady* fails.

CONCLUSION

Eaglespeaker fails to show that he is entitled to a new trial based on the newly discovered evidence that J.R. had falsified a rape allegation in Oregon in 2011 and that Helm had observed Eaglespeaker and J.R. kissing hours before the rape. Eaglespeaker also fails to show that the prosecuting attorney violated his *Brady* obligations. Therefore, we deny Eaglespeakers PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
I__, C.J.

We concur:

_____
Wor_wick, J.

_____
Cruser, J.