**FILED**
**JUNE 15, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39498-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PAUL A. WINGER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Paul Winger appeals his convictions for first and second degree animal cruelty. We affirm.

FACTS

After receiving reports of suspected animal mistreatment, law enforcement searched a rural property owned by Paul and Thelma Winger on April 29, 2018. The search revealed several animals that were emaciated and malnourished. Pens and kennels were soaked in urine and caked in feces. Many of the animals had protruding bones and

open sores. The Wingers claimed they were experiencing financial difficulties. However, there was dog food at the residence, including some unopened bags. One of the investigating officers described the scene as one of worst cases of animal mistreatment they had ever witnessed.

Officers seized several of the animals and transferred them to the custody of animal rescue organizations. Veterinarians considered the possibility of euthanasia, but opted instead to provide medically necessary treatment.

The State separately charged the Wingers with six counts of first degree animal cruelty as to a horse, three dogs, a cat, and a bird. The Wingers were also charged with second degree animal cruelty against some turtles and doves. Each of the first degree charges alleged that:

> on or about April 29, 2018, [the defendant] did, with criminal negligence, starve, dehydrate, or suffocate an animal . . . and as a result caused death or substantial and unjustifiable physical pain that extended for a period sufficient to cause considerable suffering; contrary to RCW 16.52.205 . . . .

Clerk's Papers (CP) at 37-39. The Wingers waived their rights to a jury trial and their cases were jointly tried to the bench.

At trial, the court heard testimony from treating veterinarians who testified the animals were gravely emaciated. The veterinarians opined that the animals' conditions were the result of a lengthy and extremely painful period of deprivation of adequate

2

calories. Animal rescue professionals testified that the rescued animals readily ate and recovered—continually gaining weight—as soon as they were provided proper nutrition.

One of the animal rescue volunteers who testified at trial was an individual named Jo Ridlon. Ms. Ridlon explained that she first became aware of possible mistreatment of the Wingers' animals when she received reports from community members, including George Blush, who apparently runs a pet food bank. Ms. Ridlon testified that she and Mr. Blush spoke to Paul Winger by phone a few days prior to the animals' rescue. Ms. Ridlon testified that she told Mr. Winger that her organization would help bring a veterinarian to the Wingers' property if the Wingers did not want to take their horse to a vet, but that the Wingers "refused" to schedule a vet appointment. 1 Rep. of Proc. (RP) (May 19, 2021) at 153-54.

On cross-examination, Ms. Winger's counsel asked Ms. Ridlon how she could remember the specifics of this interaction that happened more than three years prior:

> [DEFENSE COUNSEL]: . . . [Y]ou don't have any record of [the phone conversation], correct?
> [MS. RIDLON]: It's kind of memorialized in an email.
> [DEFENSE COUNSEL]: Between who?
> [MS. RIDLON]: Me and Chief [Ryan] Spurling [of the Mason County Sheriff's Office].
> . . . .
> [DEFENSE COUNSEL]: . . . [H]ow do you know there's an email?
> [MS. RIDLON]: Because I wrote it.

*Id.* at 155.

The existence of an e-mail came as a surprise to both parties. The prosecutor thereafter obtained copies of the relevant e-mail correspondence and produced them to the defense.

The defense raised a *Brady*[1] challenge and moved to dismiss the charges. The defense argued that the State had failed to disclose the e-mails for more than three years, and that one sentence in one of the e-mails was exculpatory because it showed the Wingers had obtained food for their animals. The sentence in question is written by Ms. Ridlon and reads: "George [Blush] said when *he delivered dog food to* [*the Wingers*] there were several things that didn't seem right but he didn't say anything." Ex. 3 at 1 (emphasis added); *see also* 1 RP (May 20, 2021) at 162.

Defense counsel explained they had learned from their clients that Mr. Blush had delivered them dog food, and that counsel had thus tried to interview Mr. Blush, who was hostile and refused to voluntarily participate. Defense counsel claimed that, if they had known there was independent evidence that Mr. Blush delivered dog food, the case would have been "a very different ballgame." 1 RP (May 20, 2021) at 182. The prosecutor disagreed, pointing out that "[t]he defense was on notice that food was provided to these

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

animals," *id*. at 188, and noting that defense counsel was still free to interview Mr. Blush

and subpoena him for a deposition if he proved uncooperative. *Id.* at 190.

The trial court continued the proceedings and entered an order requiring the

State to search for more e-mails at the sheriff's office relating to the Winger case.

Although the defense speculated that there were more Ridlon/Spurling e-mails than

the ones disclosed, the search of sheriff's office records revealed no additional e-mails.

The State acknowledged that, as a matter of policy, county government e-mails were

ordinarily retained for only two years, so any e-mails about the Winger case were likely

deleted as a matter of course.

The State also informed the trial court that the e-mail "which [defense] counsel

is basing their argument on"—that is, the one containing the purportedly exculpatory

sentence—was "from and to the same individual." 1 Supp. Rep. of Proc. (June 28, 2021)

at 5. An examination of exhibit 3 confirms this: the e-mail that the Wingers alleged was

exculpatory was both sent *and* received by Ms. Ridlon's e-mail address. It appears from

the exhibit that Ms. Ridlon may have inadvertently replied to herself, because the most

recent e-mail in the chain was an e-mail from her to Chief Spurling (stating, "Sorry phone

is on 1% I'll be more informative when home."). Ex. 3 at 2. The trial court rejected the

Wingers' *Brady* challenge, basing its denial on the Wingers' failure to show that the e-mail in question was in fact ever received by Chief Spurling.

After the State rested, the court dismissed the first degree charge as to the bird at the State's request. The court also granted the Wingers' motion to dismiss the second degree charges as to the turtles and the doves, concluding the State had presented no evidence those animals were in pain. The court additionally reduced the charge related to the cat from first degree animal cruelty to second degree.

The court convicted the Wingers of four counts of first degree animal cruelty as to the three dogs and the horse, and one count of second degree animal cruelty as to the cat. Mr. Winger was sentenced to 45 days of confinement, 30 days of which were converted to 240 hours of community service.

Mr. Winger timely appealed his judgment and sentence. A Division Three panel considered Mr. Winger's appeal without oral argument after receiving an administrative transfer of the case from Division Two.

ANALYSIS

Mr. Winger contends his case should have been dismissed because the State breached its duty to disclose exculpatory evidence when it did not turn over Jo Ridlon's e-mails. The law clearly requires the State to disclose evidence favorable to the defense.

*Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). But Mr.

Winger fails to show the State violated this obligation.

As an initial matter, we agree with the trial court that the State did not violate its

duty to disclose exculpatory evidence because the Ridlon e-mail was never in the State's

possession until after it came to light during Ms. Ridlon's trial testimony. Ms. Ridlon's

copy of the e-mail indicates she sent it to herself, not Chief Spurling. The State does not

violate its duty to turn over exculpatory evidence if it never possessed the evidence in the

first place. *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011) ("'[T]he

prosecution is under no obligation to turn over materials not under its control.'" (quoting

*United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991))).

Nor was the evidence in question exculpatory. The fact that the Wingers had

access to dog food and still allowed their animals to become malnourished is indicative

of criminal negligence. It is not exculpatory. Nothing about the information contained in

Ms. Ridlon's e-mail tends to detract from the weight of the State's case.

Mr. Winger suggests that the e-mail would have impeached Ms. Ridlon's

testimony. This mischaracterizes the record. Ms. Ridlon testified that the Wingers refused

to accept veterinary treatment for their horse. She never testified the Wingers refused

to accept food for their dogs. Moreover, at most, the Ridlon e-mail revealed there was,

at one point, dog food delivered to the Wingers' home. The State itself had already furnished evidence of multiple bags of dog food that had been found at the Winger residence. *See In re Pers. Restraint of Mulamba*, 199 Wn.2d 488, 503, 508 P.3d 645 (2022) (noting evidence is immaterial under *Brady* if it "can be considered cumulative of other trial evidence").

Mr. Winger argues in the alternative that if the current record is insufficient to establish the State's *Brady* violation, the matter should be remanded for additional evidence pursuant to RAP 9.11(a).

We decline to order a hearing for additional evidence under RAP 9.11(a). The trial court already afforded the parties substantial time to develop the record regarding a potential *Brady* violation. There is no reason to think that additional hearings will uncover facts favorable to the Wingers.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Winger has filed a statement of additional grounds (SAG) under RAP 10.10(a). He asserts two claims.

First, he contends there is a conflict with the funds that the State and sheriff's department received from Pasado's Safe Haven that ultimately came from the case restitution against Mr. Winger and his wife, Thelma Winger. Ultimately, Mr. Winger

alleges that this is a personal gain that violates ethics in public service laws pursuant to chapter 42.52 RCW. Mr. Winger attached a document to his SAG entitled "11th Annual Bucky Award Winners: Detective Chris Liles and Prosecutor Tyler Bickerton, Mason County, WA." SAG at 3. The document shows a news release detailing a brief summary of Detective Liles' and Mr. Bickerton's work in the Wingers' animal abuse case.

Second, Mr. Winger argues that his right to counsel under the Sixth Amendment to the United States Constitution was violated by changes in appointed counsel that he experienced over the course of four years. Specifically, Mr. Winger contends that the attorney changes occurred because the attorneys either wanted to work on other cases or were on the verge of retiring.

Mr. Winger's allegations are vague and refer to facts outside the current record. The record currently before this court fails to disclose any improper connection between the sheriff's office and Pasado's Safe Haven. Nor is there any indication of what Mr. Winger's various attorneys did or failed to do that could have constituted inadequate representation. Mr. Winger's recourse for allegations that rest on additional facts is to file a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____     _____
Fearing, C.J.                                          Staab, J.